Jensen, Respondent, vs. Wisconsin Central Railway Company, Appellant.

*October 27, 1910—March 14, 1911.*

*Railroads: Injuries to employees: Special verdict: Negligence: Contributory negligence: Location of cattle-guard and switch.*

1. Sec. 1816, Stats. (Laws of 1907, ch. 254), providing that in every action against a railroad company for injuries sustained by an employee the court shall submit certain questions to the jury, does not require such questions to be submitted in the exact language of the statute, but merely that the matters covered thereby, so far as they are in issue on the pleadings and in controversy on the evidence, shall be specially submitted by appropriate questions.

2. Said sec. 1816 does not change the settled practice as to special verdicts, except that in actions governed by it a special verdict is to be taken regardless of any request by counsel, and that, where the situation requires it, the verdict should include a question as to whether contributing fault of the defendant was greater than that of the injured employee.

3. The questions submitted in such a case should follow approved forms rather than adopt literally the statutory language. Thus the terms "want of ordinary care" and "proximately contributing" should be used rather than the statutory terms "negligence" and "directly contributing;" and as to comparative negligence the question may be simply, "If you find that mutual fault of the defendant and the plaintiff proximately caused the injury, was the fault of the defendant greater?"

4. Where the undisputed testimony of experts is that the location, with reference to each other, of a switch and a cattle-guard in a railroad yard was in accordance with the customary construction of railroads, the jury are not warranted in finding, solely upon their own judgment, that such location was not consistent with ordinary care.

APPEAL from a judgment of the circuit court for Ashland county: JOHN K. PARISH, Circuit Judge. *Reversed.*

Action to recover for personal injury.

The injury occurred while plaintiff was on duty in defendant's railroad yard at Hurley, Wisconsin. He was an experienced railroad man about twenty-three years of age, but not familiar with the particular railroad yard, though it was arranged .as yards customarily were on defendant's and other railroads. On the morning of the injury, plaintiff was acting as a fireman on an engine running on slow time as an extra. The start was made at Ashland with Bessemer as the destination. The journey was made slowly because of the engine working badly, it being difficult to keep up steam, though not on account of any defect in the appliance. That difficulty made it necessary for plaintiff to perform more labor than ordinarily. Upon arriving at Hurley it was found that there was a freight train ahead which was liable to delay the journey unless the engine in question was run in from the west on the station passing track, down such track by such train, and out on the main track to the east. Such train was standing about in front of the depot. The necessity of passing it in order to proceed without delay was discovered after proceeding by the westerly end of the passing track and down near the rear of the train. While the engine and such train were so circumstanced the engineer of the former went forward to consult with the conductor of the latter and arrange for passing. During the absence plaintiff was left in charge of the engine. The switch of the passing track was about sixty feet east of the westerly end of the yard.

At such end there was located the customary cattle-guard, constructed in the customary way, the right-of-way fences being connected therewith on either side in the usual way by conspicuous wing fences.   There was a highway and sidewalks which crossed the right of way some sixty feet east of the switch stand.   In order for the engine to go in on the passing track it was necessary to back up by the switch stand into the vicinity of the cattle-guard.   The crew were required to do the switching.   The length of the engine was such that in order to back it up so as to clear the switch the cab would be near the cattle-guard and liable to be at that point, without attention being used to avoid it.   The engine was backed toward the cattle-guard at the rate of about eight or ten miles per hour.   Upon nearing the switch it was slowed down and allowed to run under its momentum.   On the way back plaintiff busied himself, somewhat, by firing and then by looking out at one of the side windows of the cab.   He did not look in the direction the engine was moving.   In the meantime he was handed the switch key and told to alight and throw the switch and to be expeditious about it.   As the engine was about to pass the switch the engineer applied the air brake, intending to bring the engine to a stand at a convenient distance east of the entrance upon the passing track. The plaintiff, as he claims, took a proper location for alighting from the cab on the side toward the switch stand.   He stood in such location facing the front of the cab, grasping with the left hand the hand-rail on the engine, his feet being about twenty inches above the ground.   It was a bright day. A glance in the direction the engine was moving at any time for several hundred feet before reaching the switch would have disclosed the location of the cattle-guard with reference thereto.   Plaintiff faced the other way.   He did not look in the direction he was going at all. · After passing the switch stand and while the engine was still backing at a speed of

about five miles per hour and plaintiff facing in the opposite direction, with his standing place about twenty inches above the ends of the ties, he, without paying any heed to where he would land, let go the handhold and slipped or jumped backward. According to his testimony he became conscious of being near the cattle-guard just as he released his hold on the engine and admonished the engineer to set the emergency brake. He struck on the wing fence at the cattle-guard, then rolled down, throwing one leg over the rail so that the engine wheels passed over and severed it. The engineer, at the instant plaintiff alighted, was attentive to his duties in respect to placing his engine in proper position to start in on the passing track upon the switch being turned. He heard a crash as plaintiff alighted on the wing fence, which caused him to look instantly in that direction and observe plaintiff's peril. He brought his engine to a stand as soon as possible. It was properly equipped and the engineer properly handled it, bringing it to a stop in the course of about eighteen feet after plaintiff was observed to be in peril. In the meantime the injury took place. The crew knew it was necessary for the engine to be moved in on the passing track without much delay in order to clear the way for a train soon expected from the west. There was no occasion, however, for special hurry because there was, as yet, no warning of proximity of such train. The customary way, and the one supposed to be required in the exercise of ordinary care, to alight from a moving engine, is to face and jump in the direction of the motion and to look before doing so. Plaintiff was aware of that. The engine was not moving at a dangerous rate of speed, as regards an experienced railroad man in the course of his work jumping from it in a proper manner and under proper conditions. Plaintiff knew the necessity for side fences at the ends of railroad yards and he knew of the general features of railroad switches, of which the one in question was a type.

The cause was submitted to the jury on the evidence, resulting in the following verdict:

"(1) Was defendant, or any officer, agent, servant or employee, other than plaintiff, guilty of negligence directly contributing to plaintiff's injury as alleged? *A.* Yes.

"(2) Was defendant guilty of negligence directly contributing to plaintiff's injury by negligently locating its said switch too near the said cattle-guard, as alleged? *A.* Yes.

"(3) Was defendant guilty of negligence directly contributing to plaintiff's injury by suffering its said engine to get into and remain in a defective condition and by using the same in said defective condition, as alleged? *A.* No.

"(4) Was defendant guilty of negligence directly contributing to plaintiff's injury by its said engineer, Janes, while in charge of said engine, commanding plaintiff to jump off said engine while the same was in motion, as alleged? *A.* No.

"(5) Was defendant guilty of negligence directly contributing to plaintiff's injury by its said engineer, Janes, failing to set the emergency brake as soon as he could have reasonably done so, at the time of said accident, as alleged? *A.* No.

"(6) If you answer the above questions by 'Yes,' or any of them by 'Yes,' was plaintiff guilty of any negligence which directly contributed to his said injury? *A.* Yes.

"(7) If you answer the last question by 'Yes,' was said negligence of said plaintiff slighter or greater as a contributing cause to his said injury than that of defendant company's negligence or any of its officers. agents, servants or employees other than plaintiff? *A.* Slighter.

"(8) If you answer questions 1 to 5, inclusive, by 'Yes,' or any of them by 'Yes,' then was said negligent acts of defendant the proximate cause of plaintiff's injury? *A.* Yes.

"(9) If you do not find that all of said alleged acts of negligence were the proximate cause of plaintiff's injury, you will write in the number of such questions only, as you find were the proximate cause of the plaintiff's injury? *A.* Questions number 1 and 2 only.

"(10) If, from your answers to the foregoing questions, the court is of the opinion that the plaintiff should recover, at what sum do you assess plaintiff's damages? *A.* Five thousand ($5,000) dollars."

Judgment was rendered on the verdict in plaintiff's favor. Various motions, .objections, and requests were made in plaintiff's behalf and rulings made thereon and exceptions taken thereto, which will be mentioned in detail in the opinion so far as necessary to the final result of the appeal.

For the appellant there was a brief by *Glicksman, Gold & Corrigan,* and oral argument by *W. D. Corrigan.*

For the respondent there was a brief by *Sanborn, Lamoreux & Pray,* attorneys, and *Horace B. .Walmsley,* of counsel, and oral argument by *Mr. A. W. Sanborn, Mr. A. T. Pray,* and *Mr. Walmsley.*

The following opinion was filed December 6, 1910:

MARSHALL, J.   The conclusion reached in this case renders a general treatment of the form of verdict adopted by the trial court, in respect to which a number of criticisms are made and errors suggested by counsel for appellant, sufficient to dispose of all such matters.   Such general treatment is not only appropriate to the case, but may be helpful in administering the law as it exists with the legislative change effected by ch. 254, Laws of 1907.   It is quite evident that notwithstanding the exposition of the features thereof in *Kiley v. C., M. & St. P. R. Co.* 138 Wis. 215, 119 N. W. 309, 120 N. W. 756; *Boucher v. Wis. Cent. R. Co.* 141 Wis. 160, 123 N. W. 913; and *Zeratsky v. C., M. & St. P. R. Co.* 141 Wis. 423, 123 N. W. 904, there is yet, and perhaps not without warrant because of the crudities of the legislation, considerable uncertainty in the minds of bench and bar as to correct practice in submitting a case of this sort to a jury.   That is manifest here from the fact that the trial court submitted three questions covering such features, nearly in the words of the statute, explaining some of such words so as to convey an understandable meaning thereof, in harmony with settled legal principles, and in addition added other questions so as to make the verdict also respond to the general special verdict law, in harmony with the settled practice in respect thereto.

First there was submitted a question in substantial lit-
eral compliance with the supposed requirement that the jury
in such a case shall be asked whether "the company, or any
officer, agent, servant or employee, other than the person in-
jured, was guilty of negligence directly contributing to the
injury ?" That was followed by questions covering the spe-
cific acts of negligence alleged, which were, in turn, followed
by a question, substantially in literal compliance with the
statute, as to "whether the person injured was guilty of any
negligence which directly contributed to the injury," and
again by a question, in like literal compliance, as to "whether
the negligence of the company or any of its officers, agents,
servants or employees, other than the plaintiff, was slighter
or greater as a contributing cause of the injury than negli-
gence of the plaintiff;" then, upon the theory that, possibly,
the supposed legislative questions would not, though an-
swered in plaintiff's favor, find actionable negligence, for
want of a finding on the subject of proximate cause,—a ques-
tion, substantially in the usual form, was added on such sub-
ject.

Thus a double verdict was obtained. In one respect it is
substantially in literal compliance with the statute of 1907,
and in another in compliance with the general special verdict
law. The learned trial court used that extreme care, and in
addition explained the word "negligence" as used in the ques-
tions to mean want of ordinary care, and the words "directly
contribute" to mean proximately contribute. On the whole,
the questions covered the case, though no such double presen-
tation is necessary and might be confusing. Moreover, with-
out adequate explanation of the questions, it might lead to
harmful error.

It is quite plain that an inquiry in literal compliance with
the first feature of the law of 1907 referred to, could not be
answered by *yes* or *no* and inform the court with reasonable
certainty of a unanimous agreement upon either of the sev-

eral ideas disjunctively joined contrary to the settled practice on the subject which hardly admits of legislative interference. We must assume that such feature only requires the subject to which it refers to be covered by one or more appropriate questions, each involving a single issuable idea, according to circumstances, in accordance with the practice under the general special verdict law.

The term "negligence," instead of "want of ordinary care," is used uniformly in the new statute. The learned trial court repeated it some nine times in the verdict. This court, in the cases cited, construed such term to mean "want of ordinary care." That being the case, it were better to use the latter term in such a verdict and not depend upon using a supposed equivalent which is not such in fact without the aid of judicial construction.

The learned trial court, in supposed necessary compliance with the new law, used the term "directly contribute" six times in the verdict, giving the same, by instructions and appropriate supplementary questions, as before indicated, the effect of "proximately contributing." Here again it were better to have used, in the question, the term "proximately contributing," in harmony with this court's construction of the statute, instead of a supposed equivalent which is not without the aid of judicial construction.

Without further discussing the subject, covered by the several criticisms of the verdict here, it is considered that the law of 1907 simply requires the alleged actionable want of ordinary care of the defendant, the alleged or claimed want of ordinary care, if any, of the plaintiff, the proximate relation to the injury of such want of ordinary care, and in case of there being such want of care on both sides, whether that of the defendant was the greater, to be specially submitted to the jury. It does not, in effect, change the form of submission required under the general special verdict statute and the settled practice in relation thereto, except as to adding the new element.

The issues should be submitted accordingly, so far as they are involved on the evidence, legal terms being used in the questions in connection with appropriate explanations in the charge, so that a finding will result, specially, on each of the detail facts in issue on the pleadings and in controversy on the evidence. Neither the subject of want of ordinary care of the defendant or of the plaintiff need be submitted, unless, on the whole evidence, there is room for reasonable differences of opinion in respect thereto. In case of want of ordinary care of both parties being in controversy, so findings may result, convicting both of such fault and that the fault of each was in proximate relation to the injury, a question should be submitted as to which was the greater, but it need not be, and better not be, submitted in the set phrase of whether the fault of the injured party "was greater or slighter as a contributing cause," etc. The statute should be administered in its spirit. That requires, only, in case of mutual fault, that the verdict shall determine whether the fault of the defendant was the greater. The better way, it seems, is to submit the simple question : If you find that mutual fault of the defendant and the plaintiff proximately caused the injury, was the fault of the defendant the greater?

The foregoing is in strict harmony with the decisions heretofore rendered respecting the law of 1907. It gives full effect thereto, as it has been construed, and will enable trial courts to readily apply it in all situations calling therefor. It leaves the practice before the new enactment, with which the bench and bar are familiar, entirely undisturbed, except, whereas, formerly the trial court was not required to submit the cause for a special verdict unless requested to do so by counsel for at least one of the parties, now the cause should be so submitted regardless of any request, and, added to the usual form for a verdict in such cases, where the situation requires it, should be a question as to whether contributing fault of the defendant was the greater.

As before indicated, it is considered that question 1 of the special verdict was sent to the jury, thinking that, possibly, it might be held necessary, and for certainty of properly covering the case, questions 2 to 5, inclusive, were asked, covering in detail the alleged negligent conduct of defendant. The four questions, except the one numbered 2, having been answered in appellant's favor, if there be no evidence to warrant a finding as to that one in respondent's favor, the answer by the jury should have been changed from "Yes" to "No;" a like change made as to question 1, or the question stricken from the verdict as unnecessary, and question 7 likewise stricken from the verdict so as to have made all the findings harmonize with a negative finding to number 2, and judgment have been rendered on the corrected verdict in defendant's favor.

We have searched the record diligently for evidence that appellant did not exercise ordinary care in respect to locating the switch with reference to the cattle-guard. On the argument, counsel for respondent conceded there was none other than inferences from the physical situation, arguing that it was competent for the jury, in their discretion, to find from such inferences in favor of plaintiff, notwithstanding the undisputed evidence of experts that the switch and cattle-guard were located in accordance with the customary construction of roads, and particularly of appellant's road. Counsel's contention would render the arrangements of important industries, though designed by the best informed men on such matters, and according to the method adopted by the great mass of mankind in the same line of work, subject to condemnation by a jury of non-experts, solely upon their own judgment, as not consistent with ordinary care. No authority is presented in support of such claim and for the very good reason, we presume, that none exists.

The proper standard of defendant's duty was the care which the great mass of mankind ordinarily exercise under

the same or similar circumstances. Now and then it appears that the customary way of doing things is utterly disregardful of personal safety, where it is said, the mere fact that the way adopted was the customary way, is not a defense against the claim of liability. They are very extreme cases, quite different from one where men of judgment and experience commonly for a long time have been accustomed to arrange premises and instrumentalities for an ordinary business enterprise like a railroad, in a particular way, found by experience to be reasonably safe and convenient.

It seems that little more need be said. The switch and cattle-guard were necessary appurtenances of defendant's business. It necessarily possessed such large measure of freedom in laying out its railroad yard and arranging the instrumentalities in connection therewith, that pretty clear evidence would be required to warrant condemning it of being guilty of actionable negligence in the matter. With no evidence whatever in that respect, but, on the contrary, affirmative proof in abundance that it acted with all the care ordinarily exercised in such matters, there was no controversy on the question for solution by a jury. This court has often held, in terms or in effect, that if a person acts in the customary way and is not obviously careless as to the safety of persons or property of others, he cannot properly be convicted of having been guilty of actionable negligence. The logic is unanswerable, since the test of actionable negligence is absence of ordinary care, and ordinary care is the care exercised by the great mass of mankind, that a person whose conduct is in harmony with that of such great mass, under the same or similar circumstances, is not guilty of actionable wrong. With the exception noted, the rule is universal and has been often so recognized by this court. *Guinard v. Knapp-Stout & Co. Co.* 95 Wis. 482, 70 N. W. 671; *Innes v. Milwaukee,* 96 Wis. 170, 174, 70 N. W. 1064; *Prybilski v. Northwestern C. R. Co.* 98 Wis. 413, 416, 74 N. W. 117; *Dehsoy v. Mil-*

*waukee E. R. & L. Co.* 110 Wis. 412, 416, 85 N. W. 973; *Boyce v. Wilbur L. Co.* 119 Wis. 642, 646, 97 N. W. 563. In these and other authorities, the idea will be found distinctly condemned that a jury can be permitted to use, as a standard by which to test the conduct of the defendant, their conception of what should be considered due care, independently of ordinary care gauged by what is ordinarily done under the same or similar circumstances.

. *By the Court.*—It follows that the judgment appealed from must be reversed, and the cause remanded for judgment dismissing the action with costs.

The respondent moved that the mandate be modified so as to direct further proceedings in the court below according to law, and so as to grant leave to the plaintiff to move in the court below for a new trial and for such other or further relief as he might show himself entitled to on account of errors or irregularities in the conduct and trial of the case.

The motion was denied March 14, 1911.