SCHENDEL, Respondent, vs. CHICAGO & NORTHWESTERN
RAILWAY COMPANY, Appellant.

*November 15—December 5, 1911.*

*Railroads: Injury to brakeman: Contributory negligence: Compari-
son of negligence: Special verdict: Form and sufficiency: Chang-
ing answers.*

1. A brakeman on a freight train stalled in snow drifts who, after
   being sent back to signal a following train, violated a rule of
   the company by returning without being recalled and before the
   other train arrived, is *held*, upon the undisputed evidence in
   this case, to have been guilty of negligence contributing to an
   injury sustained by him when the engine of the other train
   ran into the rear end of his train; and a finding by the jury
   that he was not negligent was properly changed by the court.
2. The jury in such case found (1) that defendant railway com-
   pany was negligent, (2) that plaintiff was not negligent, and
   (3) that defendant's negligence was greater than that of the
   plaintiff and contributed in a greater degree to his injury.
   *Held*, that no proper comparison between the negligence of
   defendant and that of plaintiff was made by the jury in the
   exercise of judgment, as contemplated by sec. 1816, Stats. (Laws
   of 1907, ch. 254).
3. Under said statute the jury should not be required by the form
   of the special verdict to pass upon the questions whether or
   not defendant's negligence was greater than that of plaintiff
   and contributed in a greater degree to the injury, except when
   they find that both parties were negligent.
4. The evidence being such that the questions whether or not de-
   fendant's negligence was greater than that of plaintiff and con-
   tributed in a greater degree to the injury could not be an-
   swered as matter of law, the court, after changing the verdict
   and finding plaintiff guilty of negligence, should have sub-
   mitted those questions to the jury or, if the jury had then been
   discharged, should have granted a new trial.    Sec. 2858*m*,
   Stats. (Laws of 1907, ch. 346), does not apply to such a sit-
   uation.
5. Special verdicts should be so framed that no matter what re-
   sponsive answer is returned to any question a judgment in
   favor of one party or the other can be based upon the verdict
   as returned.
   MARSHALL, J., dissents.

APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Reversed.*

This action was brought by plaintiff to recover damages for personal injuries caused by a rear-end collision on defendant's railroad. The evidence disclosed the following facts: February 5, 1908, freight train No. 282 left Allis station, Milwaukee, where it was made up, at 1:50 a. m., bound for Chicago. It was composed of eighteen or twenty freight cars, an engine, and a caboose, and was in charge of an engineer, fireman, conductor, and two brakemen. On that morning there was a snow storm, at times it rained, a strong wind was blowing, the ground was covered with sleet and snow, and, in some places along the track, there was an accumulation of drifting snow heavy enough to obstruct the passage of trains. When the train reached a point about two and one-half miles south of what is known as Rawson station, at about 3 o'clock a. m., it was stalled owing to heavy snow drifts. The engineer thereupon disconnected the engine from the train, and, accompanied by the fireman and conductor, proceeded onward about six or seven miles further south to a place known as Willow, for the purpose of sending a message to the train dispatcher. Before leaving for Willow the conductor instructed the plaintiff, who was the rear brakeman, not to let freight train No. 286, coming from the north, collide with No. 282. Thereupon the plaintiff, according to his own testimony, took with him two lanterns, one white and one red, a fusee, and three or four torpedoes, walked about five or six hundred feet north of the caboose, lighted the fusee, and dropped it on the track to warn the approaching train No. 286. He then continued further north to a point about three quarters of a mile from the caboose and waited there about half an hour. As train No. 286 did not arrive, and as his lanterns were becoming dim, he placed a torpedo on the right-hand rail of the track and returned to the caboose to see what was the matter with his lanterns.

There he met Hall, the head brakeman, who informed him that their engine was uncoupled and that the engineer, conductor, and fireman had gone to Willow. Whereupon the plaintiff, in company with Hall, who carried a white light, again walked north to warn train No. 286, and for that purpose took with him his lanterns, fusees, and torpedoes. When they were about five or six hundred feet north of the caboose they dropped a lighted fusee, and then proceeded to the point where plaintiff previously left the torpedo. When they reached that point plaintiff claims his lanterns went out. They lighted a fusee, picked up the torpedo, walked still further north, placed on the track five fusees that had been telescoped one into the other so they would burn about fifty minutes, lighted them, set a double torpedo on the right-hand rail, and then they both returned to the caboose. Plaintiff testified that he returned for the purpose of relighting his lanterns. Hall's testimony was that there was nothing the matter with plaintiff's lanterns at any time so far as he could observe. About two or three minutes after their return, which was about 6 o'clock a. m., the engine of freight train No. 286 came on from the north, struck the rear end of the caboose, and plaintiff was injured.

Freight train No. 286 left West Allis at about 4 o'clock a. m., or about two hours later than No. 282. It proceeded as far as one mile south of Rawson station, where it was stalled because of the large snow drifts. The engineer then uncoupled the engine from the train and headed south to clear the road. When his engine struck the rear end of No. 282 its speed was from eight to ten miles an hour. The defendant maintained Hall block signals fifteen feet above the ground along the east side of the track in question. When No. 282 occupied the track it engaged two signals which warned the approaching trains from the rear of that fact: one known as the distance or caution signal, which was a warning to the engineer to slow up his engine and proceed

with such caution that, when approaching the second signal, which was called the home or danger signal and was about 3,960 feet from the caution signal, he could bring his engine to a complete stop. There was evidence to show that in clear weather the caution signal would be visible to an engineer three quarters of a mile away, and the last point from where either the caution or danger signal could be seen by one in a moving engine was about 132 feet from the signal, because from that point onward the engine obstructed the view. No. 282, when it was struck by No. 286, was standing about six or eight car lengths beyond the danger signal. On the rear end of the caboose of No. 282 there were displayed four lights, two red lights on each side thereof, one red light on top, and one white light, called an indicator, was placed in the cupola in the window, showing the number of the train.

Among the rules of the defendant company for the operation of its trains there was one which imposed the duty upon an engineer to stop his engine when passing a caution or danger signal without seeing it. Another imposed the duty upon a rear brakeman, in case of stoppage between stations, to go back for a distance of about three quarters of a mile from the rear of the stopping train, for the purpose of signaling an approaching train, and remain at such point until the train arrived or until he was recalled.

At the close of the evidence the court submitted to the jury the following special verdict:

"(1) While employed as rear brakeman, and in the caboose of train No. 282, which was standing on defendant's main track south of Rawson on the morning of February 5, 1908, was the plaintiff injured by a locomotive from train No. 286 being run into the rear end of said caboose while it was being operated by defendant's engineer? *A.* (by the court by consent of counsel). Yes.

"(2) Was the defendant company guilty of negligence directly contributing to plaintiff's said injury? *A.* Yes.

"(3) If you answer the second question in the affirmative,

was the plaintiff guilty of any negligence which directly contributed to his said injury? *A.* No.

"(4) If you answer the last preceding question in the affirmative, then was the negligence of the plaintiff when so injured 'slighter' or 'greater' as a contributing cause to his injury than any negligence attributable to the company at the same time? *A.* ——.

"(5) If you answer the second question 'Yes,' then answer this question: Was the negligence attributable to the company greater than the negligence of the plaintiff? *A.* Yes.

"(6) If you answer the last preceding question 'No,' then you need not answer this question, otherwise answer this question: Did such greater negligence attributable to the company contribute in a greater degree to the plaintiff's said injury than the negligence of the plaintiff? *A.* Yes.

"(7) Was the plaintiff guilty of any negligence which contributed to his said injury? *A.* No.

"(8) If you answer the second question 'Yes,' then answer this question: Was the negligence of the defendant company the proximate cause of the plaintiff's injury? *A.* Yes.

"(9) Was the plaintiff at the time of his said injury engaged in the line of his duty as rear brakeman of said train? *A.* Yes.

"(10) If the court should be of the opinion that the plaintiff is entitled to recover judgment against the defendant, at what sum do you assess the plaintiff's compensatory damages? *A.* $10,000."

The court on its own motion changed the answers of the jury to questions 3 and 7 of the special verdict from No to Yes. The usual motions were made by the defendant and were denied, and the court entered judgment on the special verdict for the plaintiff, from which the defendant appealed.

*William G. Wheeler,* for the appellant, cited *Dohr v. Wis. Cent. R. Co.* 144 Wis. 545, 129 N. W. 252, and *Vollmer v. Fairbanks,* 146 Wis. 630, 132 N. W. 542.

For the respondent there was a brief by *Rubin & Lehr,* attorneys, and *W. B. Rubin,* of counsel, and oral argument by *W. B. Rubin.*

VINJE, J.    The main evidence relating to the negligence of the plaintiff and the defendant is set out in the foregoing statement of facts.    As the case must be remanded for a new trial, we purposely forbear to comment upon it further than to say that the trial court properly changed the answer to question 3 from No to Yes, and that the questions whether or not the defendant's negligence was greater than that of plaintiff and contributed in a greater degree to the injury cannot be answered as a matter of law by the court.    Question number 7 was superfluous.    Question number 2 related to defendant's negligence, and question number 3 to that of the plaintiff.    Had the trial court followed the statute (sec. 1816, Stats.: Laws of 1907, ch. 254) and submitted the question, first, If your answers to questions 2 and 3 are Yes, then was the negligence of the defendant greater than the negligence of the plaintiff? and, second, If your answers to questions 2 and 3 are Yes, then was the negligence of the defendant greater as a contributing cause to the injury than that of the plaintiff? instead of requiring the jury to answer questions 4, 5, and 6 contingent upon their answering only one question in a certain way, we should not have had the unfortunate situation that now confronts us.    *Jensen v. Wis. Cent. R. Co.* 145 Wis. 326, 128 N. W. 982.    As the verdict was framed, the jury were obliged to compare the negligence of the defendant with that of the plaintiff even though they found the latter was guilty of no negligence at all.    The fifth question required them to do that, and they did.    Can such a comparison be said to be a comparison of negligence in any judicial sense?    A comparison of negligence within the contemplation of law implies the exercise of judgment, and hence room for its exercise; that is, it must relate to conditions where there is at least some necessity for the weighing of facts and the application of the reasoning faculties of the mind to the subject matter of comparison.    It does not mean the mere supplying of a fixed mathematical answer.    True,

a comparison of something with nothing may technically be said to be a comparison. But the result is certain and absolute. It does not need the exercise of judgment or the weighing of evidence to determine it. When it is ascertained that one of the quantities to be compared is a plus quantity and the other is zero, mathematical laws irrevocably fix the result of the comparison, and no jury can vary it. The axiom that something is greater than nothing needs no confirmation by a jury and is subject to no change at their hands.

But if it be conceded that the jury did make a comparison, it is evident the comparison was not made upon a right basis. The jury made it upon the basis that the plaintiff was free from negligence. The court properly said he was not, and the jury never made a comparison upon that basis—the only correct basis upon which it could be made. Nor can it logically be argued that the jury compared the conduct of the plaintiff with that of the defendant, and found the latter to constitute the greater negligence. Such an argument assumes that a comparison was necessary and possible of execution in an impartial manner. We can indulge in no presumption that the jury did a useless and meaningless thing, or that they did anything more than the verdict submitted to them and the instructions of the court required, or more than existing conditions permitted. Having found negligence on the part of the company and no negligence on the part of the plaintiff, it required no comparison of conduct or negligence to answer the question, "Was the negligence attributable to the company greater than the negligence of the plaintiff?" Their previous findings rendered such comparison useless, absurd, and one-sided only. How could they have returned a negative answer to the question without convicting themselves of the absurdity of saying that nothing was greater than something? The fact that it was impossible consistently to answer the question in the negative shows conclu-

sively that no comparison such as the law contemplates was made. The only rational answer that could be returned to the question, in view of the findings of the jury, was an affirmative one. Hence to say that a comparison of either negligence or conduct was made, when the conditions under which it occurred plainly admitted of only one rational answer, is equivalent to saying that no comparison was in fact made.

It may be suggested that these distinctions are technical and that it is a refinement upon language to make them. But we think not. After the court had changed the answer to question 3 from No to Yes, the only controverted questions touching the liability of the defendant were whether or not its negligence was greater than that of plaintiff and contributed in a greater degree to his injury. The right to have these questions determined by the jury, when they could not be answered as a matter of law by the court, was a substantial right of which neither party should be deprived. Nor should either party be debarred from the right to have such comparison made under conditions rendering a finding in his favor possible. The statute expressly recognizes the right of the jury to pass upon these questions by providing that in all cases under it the question of negligence and contributory negligence shall be for the jury, though such provision is only declaratory of the law that would otherwise govern. In every action properly triable by a jury, disputed questions of fact, that cannot be decided by the court as matter of law upon the evidence as it stands, must be found by the jury unless there is a waiver of the right to have them so found. The court, therefore, after finding the plaintiff guilty of contributory negligence, should have submitted to the jury the questions of comparative negligence and comparative contributing cause, if the jury had not then been discharged. If it had, a new trial should have been granted.

Sec. 2858m, Stats. (Laws of 1907, ch. 346), does not

apply to the situation before us. The verdict as submitted
by the court called for a comparison of negligence and con-
tributing cause, and if the jury had found plaintiff negligent
a valid comparison would have been made. No contro-
verted matter of fact was omitted from the verdict. As sub-
mitted, neither party could be held to have waived a finding
by the jury on the questions of comparative negligence and
contributing cause. The defect in the verdict became ap-
parent when the jury, contrary to the undisputed evidence,
absolved plaintiff from negligence, and yet were required by
question 5 to compare plaintiff's negligence with that of the
defendant. Special verdicts should be so drawn that, no mat-
ter what responsive answer is returned to any question, a
judgment in favor of one party or the other can be based upon
the verdict as returned.

Three additional errors relating to instructions and the
refusal to submit certain questions are assigned by the de-
fendant. They are not well taken, and are of such minor
importance that we do not deem it necessary to discuss them.

*By the Court.*—Judgment reversed, and cause remanded
for a new trial.

The following opinion was filed December 18, 1911:

MARSHALL, J. (*dissenting*). I regret that I am com-
pelled to dissent from the conclusion reached in this case.
Doubtless in one period of our judicial history,—an inter-
mediate one, I think, between the original establishment and
vindication of the Code designed to create a new, more eco-
nomical, speedy, and certain attainment of justice than for-
merly; one that should deal with substantials only, giving no
heed to technicalities, and the revival thereof which has been
so significant,—the refinement of logic by which fatal error
has been found in the record, would have the cast of un-
doubted legitimacy. But tested by the policy so often de-

clared and so often vindicated, which was intended to be firmly entrenched in our system by sec. 2829, Stats. (1898), and which the legislature in recent years helpfully assisted the court from a supposed irregular observance thereof, it seems there is danger of the present case being regarded as a lapse from the high standard of revived appreciation of the necessity for and real beneficence of adhering strictly to the policy that only errors shall be regarded efficient which are so significant as, within reasonable probability, to have prejudiced the losing party, in that had they not occurred a more favorable result to him, within such probability, would have been reached.

I must, in passing, personally acquit my associates from any purpose of a reactionary nature. They regard the error, so called, which dominated the result, as substantial; not so much, as I understand it, because had it not occurred, the result would, within reasonable probabilities, have been different, but because the written law requires the jury, in such a case, to directly and specifically pass upon the question of comparative negligence,—that, therefore, such must be done where there is room in the evidence for conflicting reasonable inferences in respect to the matter.

Now I think my brethren have given altogether too much force to the legislative enactment, in terms requiring the question of comparative negligence to be submitted to the jury. The conclusion was early easily reached that the legislature did not intend that should be submitted where the evidence and reasonable inferences from conceded or found facts are so clearly one way as to leave no reasonably disputed question for the jury to deal with. *Kiley v. C., M. & St. P. R. Co.* 138 Wis. 215, 119 N. W. 309, 120 N. W. 756; *Zeratsky v. C., M. & St. P. R. Co.* 141 Wis. 423, 123 N. W. 904. That was stepping aside from the literal meaning of words, but such meaning would have required the legislative effort on the subject to be condemned as an unconstitutional invasion

of judicial authority.    By the same helpful judicial method
we should reject any meaning which is contrary to the whole
scheme voiced so significantly in sec. 2829 and emphasized
by the legislature, even since the passage of the comparative
negligence law and regarded now as a crowning merit of the
Code.

The legislature did not mean, absolutely, that the question
of comparative fault should be answered by the jury.    It
meant that it should be answered, if necessary, in harmony
with the whole scheme of the Code.    The statute is largely
one of practice which, notwithstanding the mandatory form,
is only so as regards those matters which are within the jury's
province and as to substantials.    Otherwise it is a mere prac-
tice provision which, at the best, is more advisory than manda-
tory and, in any event, is largely within the control of courts
as indicated by the analysis of the law in *Jensen v. Wis. Cent.
R. Co.* 145 Wis. 326, 128 N. W. 982.    The court is never
bound absolutely by any practice act, though, of course, with
that respect which is due to legislative wisdom it conforms to
its notions even in that field, unless manifestly unreasonable.

Now in harmony with what was said for the court in *Jen-
sen v. Wis. Cent. R. Co., supra,* the comparative negligence
law should be administered in its spirit, rather than in its
letter, otherwise what was intended to be a beneficial change
in our system might prove to be the very reverse.    The law
should be regarded as requiring certain subject matters of
fact to be submitted to a jury for determination, where there
are conflicts of such significance as to require it according to
established practice; errors in that regard which are inconse-
quential to be disregarded.    One of such subjects is the al-
leged wrongful conduct of the plaintiff and its proximate
relation to the injury; another the alleged contributory fault
of the plaintiff, if any; a third, in case of there being any
such fault, its proximate relation to the injury; and a fourth,
in case of there being mutual proximate fault, whether that

of the defendant was the greater.    Here all of such subjects were submitted.    The jury, in effect, found that the fault of the defendant proximately causing the injury was the sole proximate cause thereof, and, necessarily, greater than any such fault on the part of plaintiff, because there was no such fault.

I must be excused for saying that I am unable to appreciate the refinement of logic by which it is said the jury made no comparison of conducts merely because they did not formally answer the set phrasing submitted to them on the subject.    True, in the technical sense, they did not compare the proximate fault of the one with such fault of the other; but I respectfully protest that the record should not be tested in a technical way.    When the jury found that the defendant was guilty of such significant proximate fault as to rise to the dignity of fatal failure to exercise ordinary care, and that the plaintiff was not guilty of any such significant fault, they, necessarily, to all intents and purposes, compared the conduct of the two, each with the other.

But, conceding for the case, that the jury erred on the evidence in not finding that plaintiff was guilty of some proximate fault, I feel satisfied the proof in that regard is not so persuasive but that, had the finding of no such fault been approved by the trial court, this court, under the judicial policy to sustain a jury's finding thus approved, would not disturb it as manifestly wrong; while, had the jury acquitted defendant of such fault and it had been so approved, it would be most emphatically disapproved here.    In other words, the evidence of proximate fault on the part of defendant was so significant that the trial court would probably not have gone far astray, if at all, had it taken the question from the jury.

The foregoing leads to several conclusions each of which would require an affirmance here.    *First.* The error of the jury, if error there were, in not convicting plaintiff of some contributory fault, and following that by making a compari-

son between such fault and that of the defendant, is inconsequential, since, had it not occurred, the same result, in all reasonable probability, would have occurred. *Second.* From the fact that the trial court changed the answer of the jury and yet rendered judgment for plaintiff; leaving the subject of contributory fault not specifically passed upon by the jury, it is manifest the judicial thought was that, strictly speaking, plaintiff, as matter of law, was guilty of some slight contributory fault, but the judgment of the jury, that if such were the case such fault did not rank with that of defendant, should not be disturbed. *Third.* The fact that the judgment was rendered as it was—if we can avoid saying the trial court studiously avoided disturbing what he considered as a substantial finding that the proximate fault of the defendant was greater than any such on the part of plaintiff,—emphatically informs us that the judge found, as matter of law, independently of the jury, that the proximate fault of defendant was greater than any such of plaintiff, which finding should not be set aside unless manifestly wrong. This last dominating and invaluable principle in our jurisprudence seems for the time to have been overlooked.

Lastly and independently of any finding or determination by the trial court, it seems that, as matter of law, the proximate fault of appellant, if there were mutual faults, was the greater.

The foregoing leaves still another matter, by no means free from difficulty, which I will suggest without discussing.

It is very doubtful whether the jury were not justified, from a view of the evidence they had a right to take, in acquitting respondent altogether, and the trial court erred in changing the finding in that respect.

Let it be considered that, technically, plaintiff should have remained out on the track. In view of the condition of the weather and his lantern, it would not within reasonable probabilities have done any good. Considering such matter and

the fact that he placed ample signals to attract the attention
of the engineer, if the latter paid any attention to his duty,
it seems the jury might well have come to the conclusion that
a return to the caboose to put his lantern into commission as
speedily as possible, was rather commendable than reprehen-
sible, notwithstanding the rules of the company which pro-
vided for staying out on the track but made no provision for
the particular emergency.    True, if he had remained out he
would not have been in the caboose and so would not have
been injured there, or at all, had he been fortunate enough to
keep clear of the train which was being run regardless of the
station signal, in effect commanding a stop, regardless of
whether weather conditions were such as to enable the engi-
neer to see it if he went flying by; and regardless of the double
signal which had been set on the track according to the rules
to attract his attention; but that would not relieve appellant
from liability.    It would take considerable space to analyze
the evidence and show that it justifies all the suggestions here
made, but I forego the labor, contenting myself with saying
that in my judgment all such suggestions are fully war-
ranted.