TIDMARSH, Administrator, Respondent, vs. CHICAGO, MIL-
WAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

*April 24—May 14, 1912.*

*Railroads: Negligence: Death of employee: Comparative negligence:
Evidence: Sufficiency: Special verdict: Whose negligence con-
tributed in greater degree to injury: Damages.*

1. Findings by the jury in this case, that a switchman who failed
   to transmit to the engineer a signal to stop given by his fore-
   man was guilty of a want of ordinary care proximately con-
   tributing to the injury and death of the foreman, who was
   crushed between the drawbar of a moving car and that of a
   standing car to which the train was being coupled, and that the
   negligence of the switchman was greater than that of the fore-
   man, are *held* to be sustained by the evidence.
2. Under sec. 1816, Stats. (Laws of 1907, ch. 254),—providing in
   substance that an injured employee shall have a right of action
   against a railway company, notwithstanding contributory neg-
   ligence on his part, if the injury was caused "in greater part"
   by negligence of the defendant; that the court shall submit to
   the jury, in case both parties be found to have been guilty of
   negligence contributing to the injury, the question "whether
   the negligence of the party so injured was slighter or greater
   as a contributing cause to the injury than that of the com-
   pany;" and that where the jury shall find that the negligence
   of the company "was greater than the negligence of the em-
   ployee so injured, and contributing in a greater degree to such
   injury," the plaintiff shall be entitled to recover,—it is error
   to refuse, upon request, to submit to the jury in explicit lan-
   guage the basic question upon which the statutory liability
   depends, namely, whose negligence contributed in a greater
   degree to produce the injury, unless that question can be an-
   swered as a matter of law by the court.
3. Findings by the jury that the injured employee and the defend-
   ant were each guilty of negligence, that the negligence of each
   contributed to produce the injury, and that the negligence of
   the defendant was greater than that of the employee, were. not
   equivalent to a finding that defendant's negligence contributed
   in a greater degree to produce the injury.
4. *Jensen v. Wis. Cent. R. Co.* 145 Wis. 326, distinguished and lim-
   ited.

5. Upon the cause of action which vested in an injured person who lived for an appreciable time after the injury, the damages recoverable are limited to those which he sustained in his lifetime; while the damages accruing to the widow or other relative by reason of his death are limited to the pecuniary loss by reason of such death, and hence accruing subsequent thereto.

MARSHALL, J., WINSLOW, C. J., and SIEBECKER, J., dissent.

APPEAL from a judgment of the circuit court for Milwaukee county: F. C. ESCHWEILER, Circuit Judge. *Reversed.*

Action brought by plaintiff as administrator to recover damages for the death of his intestate, John H. Tidmarsh, alleged to have been caused by the negligence of the defendant. Deceased met his death under the following circumstances: In the yards of the Pennsylvania Coal and Supply Company, located at the southern terminus of Fifteenth street in the city of Milwaukee, the defendant owns and operates two parallel tracks running east and west. One branches from one of the main lines of the railway company which run east and west, and extends southeasterly till it reaches the yards of the coal company, where it runs east and west, and is known as track No. 1, or the north track; the other branches off from the south side of track No. 1, runs parallel with it in an easterly direction, and is known as track No. 2, or the south track.

On the day of the accident, December 24, 1908, a car stood on the north track so close to the switch that a car on the south track could not be moved past it, and a little east of that car there was another car standing on the south track. The deceased, who was foreman of a switching crew, came from the west on the north track with an engine and six or seven cars for the purpose of coupling on to the car standing on the south track. The engine was pushing the cars, and when the easterly car had run past the switch, and was on the south track, the deceased discovered that the cars would not pass the car on the north track, and he concluded to pole the car on the north track east far enough to clear. Thereupon the deceased

picked up a stick lying near, which was about 6 x 6 and four or five feet long, placed one end against the northeasterly corner of the easterly car on the south track, or against the southwest corner of the car on the north track, and signaled the engineer to come ahead. The signal was repeated by a switchman named Geiger, who was stationed on the top of the easterly moving car, and the engineer started the cars east, and when each end of the stick was in contact with the cars the stick slipped off. Tidmarsh then signaled "back up." The signal was obeyed, and he placed the stick on the southwest corner of the car on the north track and waited for the cars on the south track to come east and strike the stick, and when the stick was struck the car on the north moved east until the timber dropped. The stick dropped because the distance between the cars at the time, cause by the widening of the space between the tracks, was greater than the length of the timber. While holding the stick between the corners of the cars the deceased had his back to the south, and when the timber dropped he turned and walked, facing east, ahead of the moving cars toward the car standing on the south track, and was caught, crushed, and killed between the drawbar of the moving easterly car and the drawbar of the standing car on the south track.

The negligence charged was that the defendant's train crew disregarded and disobeyed the signals of John H. Tidmarsh to proceed slowly with the engine and cars, and that said train crew did negligently, recklessly, and carelessly run said engine and cars, causing said plaintiff's intestate to be thrown against and crushed between one of the said cars being moved by said engine and the car standing upon track No. 2.

The jury returned the following special verdict: (1) That John H. Tidmarsh was killed by a collision between two of defendant's cars on December 24, 1908,—answered by the court; (2) that John H. Tidmarsh gave a signal to the switchman, Geiger, to stop the cars on track No. 2 after staking or

poling the car on track No. 1 for the last time; (3) that there was a want of ordinary care on the part of switchman Geiger while he was on the moving car on track No. 2; (4) that such want of ordinary care on the part of switchman Geiger proximately contributed to the injury and death of John H. Tidmarsh; (5) that there was a want of ordinary care on the part of John H. Tidmarsh at the time and place in question—answered by the court; (6) that such want of ordinary care on the part of John H. Tidmarsh proximately contributed to his injury and death—answered by the court; (7) that the want of ordinary care of the switchman, Geiger, was greater than the want of ordinary care of John H. Tidmarsh; and (8) damages $5,000.

At the close of the evidence defendant's counsel moved the court to direct the jury to return a verdict for defendant, which motion was denied. The court submitted, and the jury returned, the above special verdict, and from a judgment entered thereon the defendant appealed.

For the appellant there was a brief by *C. H. Van Alstine* and *H. J. Killilea,* and oral argument by *Mr. Van Alstine.*

For the respondent there was a brief by *McCabe & Dahlman,* and oral argument by *L. A. Dahlman.*

VINJE, J. It is claimed by defendant that Geiger was not guilty of actionable negligence. The jury found that the deceased gave him a signal to stop the moving cars after the car was poled the last time, and that he was guilty of a want of ordinary care that contributed to produce the injury. Such want of ordinary care was the failure to transmit the signal to stop the cars. There is evidence to sustain the finding that a signal to stop the cars was given to Geiger by the deceased and that it was not transmitted by the former to the engineer. The failure to transmit such a signal, under the circumstances, must be deemed a sufficient basis for a finding that Geiger was guilty of actionable negligence. But the defend-

ant argues that, conceding Geiger was guilty of negligence, the negligence of the deceased was greater and contributed in a greater degree to produce the injury, and therefore the court should have granted the motion to direct a verdict for the defendant. The jury found Geiger's negligence was greater than that of the deceased, but no finding was made as to whose negligence contributed in a greater degree to produce the injury, though the defendant asked that such a question be submitted.

The evidence shows that the cars to be coupled were equipped with automatic safety appliances permitting them to be coupled by impact without the necessity of men going between the ends of the cars. The coupling could be, and usually was, done by raising a lever at the corner of the car with one hand, thus lifting the pin, and reaching in with the other hand and opening the knuckle. In our view of the case, the fact that the cars were equipped with automatic couplers is not very significant. Had they been furnished with the old style link-and-pin coupler, there would have been no occasion for a person making the coupling to place himself between the drawbars. By standing on one side or the other thereof the coupling could be made with practically no risk to any portion of the body but the hand. In the instant case the hip and body of deceased were crushed between the drawbars, showing that he was in a position not required by any mode of coupling. Therefore, so far as known, he needlessly placed himself in a dangerous position. Under what assumption of safety he did so will never be definitely known. That he believed himself safe must be taken for granted. That such belief was founded upon the assumption that his signal to stop was obeyed is at least probable. True, as defendant argues, a glance to the rear would have disclosed the fact that it was not obeyed, but such glance was evidently not given. The situation is one from which a number of quite reasonable and varying conclusions can be legitimately drawn, and hence

Tidmarsh v. Chicago, M. & St. P. R. Co. 149 Wis. 590.

the finding that Geiger's negligence was the greater cannot be disturbed.

This brings us to a consideration of whether or not it was error to refuse to submit the question proposed by the defendant requiring the jury to find whose negligence, that of Geiger or that of the deceased, contributed in a greater degree to produce the injury. Sec. 1816, Stats. (Laws of 1907, ch. 254), provides:

"Every railroad company shall be liable for damages for all injuries whether resulting in death or not, sustained by any of its employees, subject to the provisions hereinafter contained regarding contributory negligence on the part of the injured employee:

"1. When such injury is caused by a defect in any locomotive, engine, car, rail, track, roadbed, machinery or appliance used by its employees in and about the business of their employment.

"2. When such injury shall have been sustained by any officer, agent, servant or employee of such company, while engaged in the line of his duty as such and which such injury shall have been caused in whole or in greater part by the negligence of any other officer, agent, servant or employee of such company, in the discharge of, or by reason of failure to discharge his duties as such.

"3. In every action to recover for such injury the court shall submit to the jury the following questions: First, whether the company, or any officer, agent, servant or employee other than the person injured was guilty of negligence directly contributing to the injury; second, if that question is answered in the affirmative, whether the person injured was guilty of any negligence which directly contributed to the injury; third, if that question is answered in the affirmative, whether the negligence of the party so injured was slighter or greater as a contributing cause to the injury than that of the company, or any officer, agent, servant or employee other than the person so injured; and such other questions as may be necessary.

"4. In all cases where the jury shall find that the negligence of the company, or any officer, agent or employee of such company, was greater than the negligence of the em-

ployee so injured, and contributing in a greater degree to such injury, then the plaintiff shall be entitled to recover, and the negligence, if any, of the employee so injured shall be no bar to such recovery."

It will be observed that the substantive part of the act gives a cause of action against a railway company notwithstanding contributory negligence on the part of the plaintiff, provided the injury shall have been caused in greater part by the negligence of the defendant. The administrative parts of the statute also recognize that the crucial test of liability is whose negligence contributed in a greater degree to produce the injury by providing for such a finding in both subd. 3 and 4. This court has consistently recognized such a construction of the statute. In the case of *Jensen v. Wis. Cent. R. Co.* 145 Wis. 326, 128 N. W. 982, there may be language susceptible of a different construction. But it was used in the discussion of the subject as to whose fault was in greater proximate relation to the injury, and it must be deemed limited to that. The language therein used referred to the seventh question, which read: "If you answer the last question by 'Yes,' was said negligence of said plaintiff slighter or greater *as a contributing cause* to his said injury than that of the defendant company's negligence?" thus clearly indicating that the subject of greater or slighter contributing cause was dealt with and not the subject of greater or slighter negligence. And it was suggested that the statutory question could be simplified by eliminating the alternative form thereof so it could be answered responsively by Yes or No. In the case at bar we have findings that the defendant and the deceased were each guilty of negligence; that the negligence of each contributed to the injury; and that the negligence of the defendant was greater than the negligence of the deceased. But the basic question, upon which the statutory liability depends, namely, whose negligence contributed in a greater degree to produce the injury, was not submitted. Conceding that the administrative parts of the

statute are directory merely, still the fact remains that there is no finding showing that plaintiff is within the substantive part of the statute giving the cause of action, to wit, a finding that the injury was caused in greater part by the defendant's negligence. In the case of *Schendel v. C. & N. W. R. Co.* 147 Wis. 441, 133 N. W. 830, it was held that the right to have the questions as to whose negligence was the greater and whose negligence contributed in a greater degree to produce the injury submitted to the jury was a substantial right when they could not be answered as a matter of law by the court. Such right is not only provided for in the statute authorizing the recovery, and without which none could be had, but it has a substantial basis for its existence in the law of negligence itself. It was therefore prejudicial error to refuse to submit the question requested, unless it can be answered as a matter of law by the court. The observations made respecting the finding that Geiger's negligence was greater than that of the deceased apply equally here. Many legitimate and probable inferences from the situation may be drawn bearing more or less upon the preponderance of the one or the other negligence as a contributing cause. It therefore lies within the field of jury questions, and should be submitted to a jury to answer.

Counsel for plaintiff argues that since the jury found the deceased and the defendant were each guilty of negligence; that the negligence of each contributed to produce the injury; and that the negligence of the defendant was greater than that of the deceased, that the verdict was therefore equivalent to a finding that defendant's negligence contributed in a greater degree to produce the injury than did the negligence of the deceased. He says the negligence of both was found to have contributed to the injury, and the negligence of the defendant was found to be greater, therefore it was found to be a greater contributing cause. This would be true only in the event that it can always be said that the greater negligence contributes in a greater degree to an injury—a proposition not sound in

fact. To say that the jury, by finding that defendant's neg-
ligence contributed to the injury and was greater than that of
the deceased, has found that the injury was caused in greater
part by the defendant's negligence, is to deprive the defend-
ant of the right to submit to the jury the most vital question
upon which its liability depends. The statute plainly con-
templates that in every case where different inferences may
legitimately be drawn as to whose negligence contributed in
greater part to the injury, such question shall in explicit lan-
guage be submitted to and passed upon by the jury. The stat-
ute is clear and definite in its requirements upon that point
and a cause of action founded thereon must comply with its
terms.

Contention is made that inasmuch as the deceased lived an
appreciable length of time after the injury, a cause of action
vested in him that survived; that plaintiff has two causes of
action, one based upon the right of action that vested in the
deceased, and one for the pecuniary loss sustained by the
widow; that the cause of action vesting in the deceased sur-
vives in its entirety, and under it damages, covering earnings
which it is reasonably certain the deceased would have received
had he lived, could be recovered; and that it was therefore er-
ror to instruct the jury in this action, which is one for the
pecuniary loss the widow has sustained, that they should take
into consideration the probable future earnings of the deceased
had he lived and the probability of her sharing as heir in the
additions to his property from future earnings. In *Johnson
v. Eau Claire, ante,* p. 194, 135 N. W. 481, it was held that
damages for the cause of action that vests in the deceased are
limited to damages which he sustains in his lifetime, while
damages accruing to the widow or other relative by reason of
the death of the deceased are limited to pecuniary loss result-
ing by reason of such death, and hence accruing subsequent
thereto. Such rule of damages permits of no duplication.
The estate recovers on a cause of action vesting in the deceased

the damages he sustained in his lifetime, and the widow or next of kin the pecuniary damages accruing to her or them by reason of his death and subsequent thereto. Hence the court properly told the jury to consider the future probable earnings of the deceased had he lived which they were reasonably certain she would have received from him, and the additions that the earnings of the deceased would probably have made to his property had he continued to live, and the reasonable expectation which the widow had of pecuniary advantage by ultimately receiving a share of such earnings as one of his heirs. *Nemecek v. Filer & S. Co.* 126 Wis. 71, 105 N. W. 225; *Johnson v. Eau Claire, ante,* p. 194, 135 N. W. 481.

For the error of refusing to submit to the jury the question requested by defendant, as to whose negligence contributed in a greater degree to produce the injury, the judgment must be reversed.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.

The following opinion was filed May 27, 1912:

MARSHALL, J. (*dissenting*). In *Jensen v. Wis. Cent. R. Co.* 145 Wis. 326, 128 N. W. 982, the comparative negligence law was carefully analyzed, all desiring to give the broadest remedial effect practicable to the new legislation which the lawmakers intended, consistent with such reasonable construction thereof as to make it conform to the ordinary settled meaning of terms and the established practice under the Code as regards submitting each question of a special verdict so as to cover one material issue and call for a negative or affirmative answer in respect thereto. It was held that the better way to submit the matter of comparative efficient fault is by this simple question: "If you find that mutual fault of the defendant and the plaintiff proximately caused the injury, was the fault of the defendant the greater?"—this being preceded

by questions covering the subject as to each of the parties of whether want of ordinary care on the part of each proximately contributed to produce the injury. It was thought, and emphatically declared, that such easily understood proposition, submitted in the order indicated, would definitely elicit from the jury, whether want of ordinary care on the part of defendant proximately contributed to produce the injury and in greater degree than such fault of the plaintiff.

I do not understand there is any purpose to disturb the *Jensen Case* which bench and bar have familiarized themselves with and endeavored for some time to follow; but, the thought is, that the trial court, instead of adopting the suggested question, verbatim, followed, more nearly, this language of discussion leading up to it: "The statute should be administered in its spirit; that requires, only, in case of mutual fault proximately producing the injury, that the verdict shall determine whether the fault of the defendant was the greater."

The suggested question included the words "mutual fault of the defendant and plaintiff proximately produced the injury." So, here, if such words had not been omitted from the vital interrogatory, probably it would be held faultless,—that if negligence of defendant, found to have proximately contributed to produce the injury, was greater, as a producing cause thereof, than want of ordinary care of the plaintiff, found to also have so contributed, then the former did so in greater degree than the latter. In short, that the particular word "degree" is not essential to a complete verdict under the comparative negligence law, though it is necessary to find the fact as to whether want of ordinary care of the defendant was greater, as a proximately producing cause of the injury, than such fault of the plaintiff. Where is there any substantial difference between the suggested question in the *Jensen Case* and the one here? I cannot see any.

It will be noted that the jury were asked by question 3, in connection with question 4, whether want of ordinary care

of defendant proximately contributed to the injury; then by question 5, in connection with question 6, whether such want of plaintiff also so proximately contributed, and then were asked "If you answer questions 3 and 4 'Yes' "—that is, in effect, find that want of ordinary care on the part of defendant proximately contributed to produce the injury,—"was the want of ordinary care of the defendant greater than the want of ordinary care of the plaintiff ?"

Do not the words "want of ordinary care" first used, unmistakably, refer, to want of ordinary care proximately contributing to produce the injury referred to in the fourth question in connection with the third; and the want of ordinary care last mentioned, refer to the fault covered by the fifth question which proximately contributed to produce the injury as found in answer to the sixth question ?   If so, how can it be said that want of ordinary care which was the greater contributing cause to produce the injury was not such want of care contributing to such result in greater degree ?   What is the difference between, was there want of ordinary care on the part of defendant proximately contributing in greater degree to produce the injury than want of ordinary care of plaintiff which so contributed; and, was there want of ordinary care of defendant which proximately contributed to produce the injury greater than want of ordinary care on the part of plaintiff—referring by necessary inference to that covered by questions 5 and 6—"which proximately contributed to produce the injury ?"   If the former was the greater, as there may be as many degrees as the efficient fault of the one might be appreciably greater than that of the other, how can one say it did not contribute in greater degree ?   Is not all that which is omitted from the question, as regards mere words, included by necessary inference ?   It seems so.

The trial court evidently endeavored to frame the verdict with scrupulous care to conform to the settled practice of this court and its construction of the comparative negligence law.

Perhaps it were better to have included words in the seventh question expressly referring to the want of ordinary care which proximately contributed to produce the injury as suggested in the *Jensen Case;* but they were there by necessary inference.

Winslow, C. J., and Siebecker, J. We concur in the foregoing dissenting opinion by Mr. Justice Marshall.