Innes vs. City of Milwaukee.

INNES, Administratrix, Respondent, vs. CITY OF MILWAUKEE, Appellant.

*April 10 — April 30, 1897.*

*Injury to employee: Failure to furnish most approved appliances: Special verdict: Inconsistent findings.*

1. In an action by a servant to recover for injuries alleged to have been caused by a failure to furnish him a safe place in which to work, a failure to furnish the latest and most approved appliances does not constitute negligence as matter of law, the test of liability being whether the master exercised such care in that regard as men of ordinary care and prudence observe in and about their affairs, or such care as the great mass of men observe under similar circumstances.

2. Where the only negligence relied on in an action for the killing of a boiler attendant by the bursting of an elbow in a blow-off pipe was the use of a cast-iron elbow, a finding of the special verdict that it was constructed of the materials and in the manner ordinarily and usually employed in the construction of such elbows is inconsistent with findings that there was a defect or insufficiency in it which caused it to give way and burst, and that the defendant was guilty of want of ordinary care which was the proximate cause of the accident.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

Plaintiff's intestate, Alexander Innes, was an employee of defendant, to assist in attending some steam boilers used to generate steam for power to operate its water pumps. The boilers were put in place and installed for defendant by the E. P. Allis Company, a few months before the injury hereafter mentioned. One of the necessary attachments to such boilers was a blow-off pipe used for emptying the boilers when desired. At a point in such blow-off pipe where it was subjected to the full pressure of steam in the boilers was a cast-iron bend, attached to the wrought-iron pipe by means of a thread on the pipe and in the elbow, whereby the two were screwed together. While the deceased was about his work, the steam pressure caused the bend to burst, whereby steam and hot water escaped from the boilers and so scalded the deceased as to cause his death. This action was brought by the personal representative of the deceased, to recover damages, on the theory that the cast-iron bend was insufficient, and that defendant knew it, or ought to have known of it, and that the deceased came to his death by reason of negligence on the part of the defendant in operating its steam plant with such defective bend, so located as to be liable to burst and injure those required to be in the vicinity about their work. The defendant answered, denying that the bend was insufficient, or that its bursting was attributable to any negligence on the part of the defendant, and alleged that the boilers were furnished, set up, and put in operation for the defendant by the Edward P. Allis Company; that said company was of good credit and reputation in its business, and was relied upon by defendant to adjust all the parts of the steam apparatus in a suitable manner; that the steam pipe and cast-iron bend had no discoverable defects prior to the accident, and that it was reasonably safe and serviceable for the purpose for which it was designed and used.

The jury rendered a special verdict in part as follows: "Q. Was such pipe and bend constructed of the materials and in the manner ordinarily and usually employed in the construction of such pipes and bends, at and prior to the time of the accident? A. Yes. Q. Were there at that time other and safer elbows or bends known and in general use? A. Yes. Q. If you answer the fourth interrogatory in the affirmative, were such other and safer appliances generally known to be less liable to sudden breaks and explosions? A. Yes. Q. Was there any defect or insufficiency in such pipe or bend which caused such bend to give way and burst? A. Yes. Q. If you answer the last question in the affirmative, was such defect or insufficiency so obvious and apparent that the officers and agents of the defendant city knew, or might in the exercise of ordinary care have discovered, it? A. Yes. Q. Was the defendant, the city of *Milwaukee*, or any of its officers, guilty of any want of ordinary care which was the proximate cause of the injury to the plaintiff? A. Yes. Q. Did the defendant contract for a purchase of the blow-off pipe and bend from reputable and responsible dealers in and manufacturers of such appliances? A. Yes. Q. Did the defendant contract for and purchase the blow-off pipe from Edward P. Allis Company, and were the same connected with the boiler by it under its contract with the defendant? A. Yes. Q. If you answer "Yes" to the last question, and also to the sixth question, did the defect and insufficiency in the blow-off pipe and bend, which caused the bend to give way and burst, result from the carelessness and neglect of the Edward P. Allis Company, its agents, employees, or workmen, in the first instance? A. Yes." Damages were assessed at the sum of $3,000.

Both sides moved for a judgment on the special verdict. Defendant's motion was denied, and plaintiff's granted. Judgment was thereupon entered in plaintiff's favor, from which judgment this appeal was taken, proper exceptions

having been made to present the question discussed in the opinion.

For the appellant there was a brief by *C. H. Hamilton*, city attorney, and *Max W. Nohl*, of counsel, and oral argument by *Mr. Nohl*.

For the respondent there was a brief by *Bell, Brazee & Stover*, and oral argument by *A. W. Bell*.

MARSHALL, J.   The alleged negligence consisted in the use of a cast-iron bend attached to a wrought-iron pipe in the manner described in the complaint. All the evidence to establish want of ordinary care on defendant's part was directed to the question of whether such a bend was generally considered reasonably safe and was in general use for the purpose to which it was put in defendant's steam plant, at and before the time of the injury. The jury determined that question in defendant's favor, by finding that such pipe and bend were constructed of the materials and in the manner ordinarily and usually employed in the construction of such pipes and bends at and prior to the time of the accident. True, the jury also found that safer appliances were known, that the bend in question was obviously defective, and that defendant was guilty of want of ordinary care, which was the proximate cause of the injury; but the obvious defect referred to clearly goes only to the fact that the bend was of cast iron and attached to a wrought-iron pipe. It does not change the effect of the finding that the appliance was one of the kind ordinarily used, both in respect to material, construction, and adjustment. If the finding of want of ordinary care was based on the use of the cast-iron bend, which was a usual appliance and usually found safe, the two findings directly contradict each other. If it is directed to the finding that there was a safer appliance known at that time, it applied the rule that a person, in the use of machinery, must take advantage of known improvements in the direc-

tion of safety, which rule has no application whatever to the relation of master and servant. The true rule is well stated by standard text writers, to the effect that the master is not liable for the consequence of danger, but of actionable negligence. When a person is charged with such negligence, and it is shown that his conduct came up to the standard of persons generally, in the same business, under the same circumstances, neither jury nor court has a right to say that such way is a negligent way from any legal standpoint. The master cannot be held responsible for not adopting the best way. It is sufficient if he takes the ordinary way. This rule is universal in its application to the relation of master and servant, unless such ordinary way be obviously dangerous. *Guinard v. Knapp-Stout & Co. Company*, 95 Wis. 482; *Wormell v. M. C. R. Co.* 79 Me. 404; *Lehigh Coal Co. v. Hayes*, 128 Pa. St. 294; *Bradbury v. Goodwin*, 108 Ind. 286; *Iron-Ship Building Works v. Nuttall*, 119 Pa. St. 149; *Titus v. B., B. & K. R. Co.* 136 Pa. St. 618.

So, the effect of the verdict as a whole was to find both that defendant was free from actionable negligence, and was guilty of such negligence. A verdict so contradictory and inconsistent is insufficient to sustain a judgment. *Conroy v. C., St. P., M. & O. R. Co., post*, p. 243. This case is ruled by the decision in *Guinard v. Knapp-Stout & Co. Company*. It is there held in effect that a person in the conduct of his business, who furnishes an employee with a place to work as free from danger as other persons of ordinary care and caution, and engaged in like business and under like circumstances, ordinarily furnish, his duty in that regard is fully performed. It may be taken as the settled law that the test of actionable negligence, in a case where the servant seeks to recover damages for injuries alleged to have been caused by failure of duty on the part of the master in respect to furnishing such servants a reasonably safe place to work, is whether the master came up to the standard of

persons generally under similar circumstances. Did he exercise such care as men of ordinary care and prudence observe in and about their affairs, or, in other words, such care as the great mass of men observe under similar circumstances? *Dreher v. Fitchburg*, 22 Wis. 675; *Jung v. Stevens Point*, 74 Wis. 547; *Ward v. M. & St. P. R. Co.* 29 Wis. 144; *Lockwood v. Belle City St. R. Co.* 92 Wis. 97. If so, and an injury nevertheless happens, it will be without legal wrong; hence without legal redress.

Applying the foregoing to the facts of this case, it is plain that the jury acquitted the defendant of any breach of its duty to exercise ordinary care in respect to furnishing plaintiff's intestate with a reasonably safe place to work, and then followed with the inconsistent finding that defendant was guilty of a want of ordinary care in that respect. A judgment rendered on such a verdict is without any basis to support it.

Several errors are assigned in the brief of counsel for the appellant, which need not be noticed, for if errors in fact and prejudicial as well, they are not liable to occur upon another trial.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.