Leonard Ashbach, by Reuben Ashbach, his father and next friend, Appellee, v. Iowa Telephone Co., Appellant.

**Contributory negligence:** INFANTS: EVIDENCE: INSTRUCTIONS. A telephone company was stringing wires by means of ropes and tackle fastened to a tree near the sidewalk and pulled by horses. The evidence showed that children were passing the place in question and were attracted by the work and apparatus; that the company's workmen had warned some of them to stay away, but at that time no workmen were present at the place of the accident, and there was no guard or attendant present; and plaintiff, who had not been warned of the danger, was injured by taking hold of the rope which drew his hand into the pulley. *Held*, as plaintiff was but seven years of age it cannot be said as a matter of law that he was guilty of contributory negligence in taking hold of the rope.

**Same.** A telephone company constructing its lines along a public street, using ropes and pulleys tied to a tree near the sidewalk for that purpose, is not a trespasser upon the street, nor is a child who steps from the sidewalk onto the parking or street a trespasser; but if defendant was at fault in operating such appliances without a guard or warning because the apparatus used was such as would attract young children, and defendant knew children were passing the place in question and were attracted by the work, even though plaintiff in a technical sense was a trespasser in taking hold of the rope ''to aid the horses in pulling,'' still the doctrine that there was no duty owning him until his peril was discovered does not apply in full force, if at all.

**Same:** NEGLIGENCE: EVIDENCE. A telephone company may properly use the streets of a community in building or repairing its lines, but it is bound in law to the exercise of ordinary and usual care in the handling of its apparatus and appliances in such operations; and what amounts to such care is usually a question to be decided by the jury from all the facts' and circumstances of each particular case. In the instant case the evidence is reviewed and held sufficient to sustain a finding of negligence on the part of defendant in failing to properly guard its ropes and appliances, and in failing to warn young children of the danger.

*Appeal from Polk District Court.*—HON. CHARLES S. BRAD-
SHAW, Judge.

TUESDAY, MARCH 24, 1914.

ACTION to recover damages for injuries sustained by plaintiff, Leonard Ashbach, due to the alleged negligence of defendant in operating some of its appliances in a public street in the city of Des Moines without maintaining a guard or giving warning to those who might come in contact there-with.   Negligence was denied, and contributory negligence pleaded, and, on the issues joined, the case was tried to a jury, resulting in a verdict and judgment for plaintiff, and defendant appeals.

*Parker, Parrish & Miller,* for appellant.

*Stipp & Perry,* for appellee.

DEEMER, J.—Although this action is brought for and on behalf of a minor, by his next friend, we shall for conven-ience, call the injured party "plaintiff."   The facts stated most strongly for plaintiff, as they should be on this appeal, are as follows: The defendant, the Iowa Telephone Company, having for the purposes of this case the right to occupy the streets of the city of Des Moines, was on the 23d day of February, 1912, engaged in stringing large lead cables or conduits to the cross-arms of telephone poles on College avenue, in said city.   At the time of the accident in question, it was at work stringing these cables within a block of what is known as the Henry Sabin public school and kindergarten, which large numbers of small children attended.   Plaintiff was one of the attendants at this school, and at the time he received his injuries was seven years of age.

The cable which the defendant was stringing was slowly unwound from a large spool, anchored in the street,

and to the end of the cable a large rope was attached which ran up to a pulley fastened upon one of the cross-arms of the telephone pole, thence through a series of like pulleys to other cross-arms, and finally to the base of a telephone pole standing in the parking between the sidewalk and the curb, on the south side of College avenue, at the alley between

1. CONTRIBUTORY NEGLIGENCE: infants: evidence: instructions.

what is known as Third and Fourth streets. At the base of the last pole above described was a large pulley, called a "snatch block," through which the rope attached to the cable ran, and a team was attached to the end of the rope after it passed through the snatch block. When the horses attached to the rope were driven forward along the street, the rope was made taut and, passing through the different pulleys, drew the cable up to the cross-arms for fastening.

The attached photo shows the situation and is a correct representation of the snatch block in question.

No guard of any kind was used to keep children or others away from this appliance, and, as we shall see, no person was stationed at or near it at the time of the accident.

The pulley was within but a few feet of the sidewalk, and also close to the alley, as shown in the photo. At the close of school which plaintiff was attending, he, with several of his schoolmates, started for his home, and passed along the sidewalk on the south side of College avenue until they came to the snatch block, and observing it in motion, and that the team was being driven to raise the cable into position, they stopped, and several of the children, including plaintiff, stepped onto the parking and caught hold of the rope as it passed into the pulley, for the purpose of "helping the horses pull." Plaintiff had hold of the rope nearest the pulley, and at that particular moment the rope suddenly jerked, and plaintiff's hands were both drawn into the pulley. The two middle fingers of his right hand were pulled out, and with them the tendons running up into the forearm, and both hands were badly cut, bruised, and injured. It also appears that another group of children passed by this appliance shortly before the one of which plaintiff was a part, reached there, and one of defendant's employees testified as follows regarding what happened at that time:

When we first stopped after starting up from the second hitch, there were some children on the street. They were along on the sidewalk and parking, playing along there, coming home from school. It would be hard for me to say how many there were of them. I don't know just the number. There were perhaps about a dozen, or something like that. With reference to the pulley, they were scattered along all the way from the kindergarten. Here by the pole where the pulley was, some of them came near the rope. They were dancing out on the parking, some jumping up and touching the rope with their hands occasionally. That was while we were standing there after this first stop, a couple of boys jumped up and touched the rope, and I said: 'Get away; you are liable to get hurt. Don't be bothering that rope.'

There was some of them that still persisted in it after we started that time. When I spoke to them first, they got back. They would get back when I would tell them to each time. As we started, there was something said to the boys. I told them to get back and stay away from that rope; they might get hurt. They stepped back. Some of them started on toward home. After I started up from this stop, I spoke to them again before stopping at the time of the accident. At that time I was sitting on the rope behind the whiffletrees. From this stop we had gone possibly fifteen or twenty feet when I looked around and hallooed that time. At that time there were two children hold of the rope, and they let loose and got back. Then I looked ahead for signals, and the next I knew this jar came, and I looked around and this boy was screaming, and I said, 'Whoa.' I was pretty badly scared. I could tell there was a jar on the rope by the feeling; vibration of the rope as these fingers went into the pulley.

At the time plaintiff received his injuries there were no men within a half a block of the group of children to which he belonged, and a jury was justified in finding that no warning was given to the group to which plaintiff belonged. The negligence charged in the petition was as follows:

(1) The defendant corporation was negligent in that it used and operated a dangerous instrumentality, calculated to excite the curiosity and invite the attention of small children in a public street in the city of Des Moines, at a place where small children at said time were apt to be, of all of which the officers and agents of defendant corporation knew, or by the exercise of ordinary care should have known.

(2) The defendant corporation was further negligent in operating said instrumentality on a public street, in a manner and at a place where the same was within easy reach of children, without having any employee or person near at hand to give warning to small children of the danger thereof, or to prevent them from taking hold of said rope or pulley.

(3) The defendant corporation was further negligent in that it did not fasten said pulley to said telephone pole at a sufficient height from the ground so that small children, on being attracted thereto by said moving rope and pulley,

might not have their hands drawn into said pulley, which said corporation might and should have done.

(4) The defendant corporation was further negligent in that it was engaged in using an apparatus upon a public street, at a place where small children were and were apt constantly to be, of a character likely to excite the curiosity and attract the attention thereof and cause said children to take hold of said rope and pulley when in motion, but without providing any barricade about said apparatus, or stationing any servant or employee nearabouts to warn said children and prevent them from touching or taking hold of said rope or pulley, as without said barricade or warning they were likely to and did do.

Defendant denied all negligence, and further pleaded contributory negligence on the part of the plaintiff. The trial court gave the following instructions on the subject of defendant's negligence:

It is for the jury to determine whether or not the defendant was negligent, as charged by the plaintiff. The negligence charged against the defendant in this case may be stated thus: That at the time and place of the accident, at a time and place where little children were apt to be, the defendant was using an apparatus, dangerous in character, and of a nature likely to excite the curiosity and attract little children to play with, or interfere with, such apparatus; that defendant knew, or in the exercise of ordinary care should have known, that children were apt to be at that place at that time; that the defendant knew, or in the exercise of ordinary care should have known, that said apparatus was dangerous in character, and of a nature likely to excite the curiosity and attract little children to play with, or interfere with, such apparatus; that in such use of such apparatus the defendant did not exercise such care to guard against injury to such children as an ordinarily careful and prudent person would exercise under the circumstances. If that charge has been proven, by a preponderance of the evidence, you would be warranted in finding defendant was negligent, and you may consider as hereinafter instructed. If it has not been so proven, you will consider no further, but return your verdict for the defendant. That an accident may have hap-

pened, about the time and place alleged, does not establish, nor does it raise a presumption, that defendant was negligent. The defendant was not an insurer against accident, and can be held liable, if at all, only for damages, if any, which resulted from injury caused by the negligence of the defendant, charged by the plaintiff in his petition, and proven upon the trial. In determining whether the defendant was negligent, you will consider only the acts charged by the plaintiff as negligence, set forth and enumerated in these instructions, that have been proven, if any have been proven, and then only such negligence, if any, as was the proximate cause of the injury to Leonard Ashbach. In determining whether the defendant was negligent, you will consider the definitions of 'ordinary care' and 'negligence,' elsewhere given you in these instructions; and you will consider, as shown by the evidence, the nature and character of the business in which the defendant was engaged, the location where the accident is alleged to have occurred, and the surroundings thereabout, whether or not the place was one where small children were apt to be at that time, the location and character of the apparatus in use by defendant, and the manner of its use, whether or not said apparatus was of a nature likely to excite the curiosity of small children, and tempt them to play with or interfere with the same, whether or not said apparatus was dangerous in character, what, if any, precautions were taken' by defendant to warn children and prevent injury to them, the age, intelligence, and experience of Leonard Ashbach at that time, and what might reasonably be expected from one of his age, experience, and intelligence, what defendant's employees, in charge of said apparatus, were doing, or in the exercise of ordinary care should have done, what the defendant's employees, in charge of said apparatus, knew, or in the exercise of ordinary care should have known, where the defendant's employees, in charge of said apparatus, were, or in the exercise of ordinary care should have been, together with any other facts and circumstances disclosed by the evidence showing or tending to show, that the defendant was or was not negligent, as defined in these instructions. In this connection you are instructed that what would be ordinary care as against injury to persons of mature years and judgment would not necessarily be ordinary care as against injury to persons of immature years and judgment. If the

defendant's employees, while in the discharge of their duties
as such employees, in the handling and operation of said
ropes, pulleys, and apparatus, are proven to have been guilty
of negligence, as defined in these instructions, such negli-
gence would, within the meaning of these instructions, be the
negligence of the defendant. The defendant, at the time and
place of the accident, had the right to use the street in plac-
ing its cable upon the telephone poles, and had a right to use
tackle, apparatus, and machinery, which were necessary for
the accomplishment of that purpose. The plaintiff had a
right to be upon the street at such time and place. Neither
the plaintiff nor the defendant had the exclusive right to use
such street, and it was the duty of each to exercise ordinary
care in the use thereof.

Proper definitions of negligence in the abstract were
given, and the instructions also properly submitted the ques-
tion of contributory negligence. At the close of the testi-
mony, defendant filed a motion for a directed verdict, which
was overruled, and it also asked instructions to the effect
that no actionable negligence was shown and that a verdict
should be returned for it, and these were each and all
refused. It also asked the following instructions, which were
either refused or modified in the court's charge, or given in
substance as requested:

The defendant company, at the time of the accident, had
the lawful right to use the street upon which its employees
were working in placing the cable upon the telephone poles,
and had the lawful right to use the tackle, apparatus, and
machinery which were necessary for the accomplishment of
said purpose. Having such right, no person using the street
at said time and place, and no passerby, whether child or
adult, had the lawful right to interfere with the tackle, ap-
paratus, or machinery then in use by the defendant company,
and if the plaintiff did, while said defendant was so lawfully
engaged in the work then at hand, take hold of the rope used
by the defendant in said work, and by reason thereof his hand
was caught in said pulley, he was, as to the defendant, a tres-
passer. If you find from the evidence that the defendant, in
its work of placing the cable upon its telephone poles along

or upon College avenue, provided a reasonably sufficient crew of men to perform such work, and also the usual and standard equipment of ropes, poles, snatch blocks, and other apparatus, reasonably necessary to accomplish said work, and that said men, while performing the work at hand, were engaged in accomplishing said work at the time of the accident, and that said tackle was in actual use by said employees at said time, then and in such event it was not the duty of the defendant company to furnish an extra man to stand guard over the pulley or other apparatus then in use for the purpose of keeping children from interfering with said apparatus or equipment, or from becoming injured by such interference. The only duty which could devolve upon the defendant under such circumstances would be the duty of using reasonable care and caution to prevent injury after defendant or defendant's employees had discovered that the child or children had actually attempted to take hold of the rope or apparatus and was in imminent danger of being injured. After such discovery, if any, it would be the duty of the defendant's employees to use reasonable and ordinary care to prevent injury to such child or children. In this case, however, there is no evidence which would warrant you in finding that, after the plaintiff had taken hold of the rope just previous to the accident, any of the employees discovered the peril of the plaintiff in time to have avoided the injury. You will therefore find that the defendant was not negligent in not having a man or guard stationed at the place of the accident, and will also find that the defendant was not guilty of negligence after its employees discovered the peril of the plaintiff. The defendant's employees were lawfully upon the street where the accident occurred, engaged in a lawful business. So far as the evidence in this case discloses, the machinery and apparatus which they were then using were properly constructed and carefully managed. The nature of the work and the character of the apparatus and machinery which they were operating were patent. There was no danger to persons crossing the street, or passing along the street, unless such person or persons voluntarily caught hold of, or interfered with, the machinery and apparatus there being used. It was not, therefore, the duty of the defendant to keep constant watch or to use extraordinary care to prevent the plaintiff, or other children, approaching said machinery or appa-

ratus, or taking hold thereof. The only duty that could devolve upon the defendant would be to use reasonable care and diligence to prevent the plaintiff being injured after the employees discovered that the plaintiff had taken hold of the rope in such position or manner as to be in imminent danger of injury. After such interference with the defendant's property was discovered by the employees, then it would be incumbent upon the defendant's employees to use ordinary care and diligence to prevent injury, and, if you find from the evidence that the defendant's employees did not discover that the plaintiff had taken hold of the rope in such manner as to be in danger of injury until after the accident had occurred, then and in such event your verdict should be for the defendant. You are instructed that the tackle used by the defendant in the work at hand at the time of the accident, including the pulley and snatch block at which the plaintiff was injured, was not a dangerous instrumentality, nor was it attractive to children in such sense that it became the duty of the defendant company to have a guard stationed at the place of the accident to keep children from catching hold of the rope and getting injured thereby. You are instructed that, under the evidence offered on the trial of this case and the circumstances disclosed thereby, it was not the duty of the defendant company to erect around the pulley and snatch block, at which plaintiff was injured, a guard or barricade to keep children from intruding and taking hold of the rope or other apparatus then in use by the defendant company. The defendant was, at the time of the accident, lawfully using the street where the accident occurred, and was pursuing a lawful business, and in the use of the appliances necessary to carry on the work then at hand, and in operating the machinery, apparatus, or appliances on the street aforesaid, it was not an insurer of the lives or safety of persons passing along or upon said street. All that is required of the defendant company was to use ordinary care to avoid accident to others lawfully using the street.

A comparison of the instructions given with those asked clearly indicates the difference between counsel as to the main proposition of law in the case. True, counsel for appellant strenuously insist that the plaintiff was guilty of contributory negligence as a matter of law.

But, as plaintiff was but seven years of age, we are not justified in saying, as a matter of law, that he was guilty of contributory negligence. This is an elementary proposition, for which no authorities need be cited.

II. Defendant also claims that plaintiff was a tres-passer, and that it owed him no duty until his peril was discovered, and then at most but the use of ordinary care. As to this the court correctly in-structed that neither party was a trespasser upon the street, and that each had an equal right thereto. As to the mere presence of the parties on the street, this was undoubtedly a correct proposition of law. Defendant simply had a license to use the street for the purpose of doing its work, and the child was not a trespasser because it in play, or otherwise, stepped off the sidewalk and onto the parking, or even into the street.

2. SAME.

It is true that in a sense the boy was a trespasser in taking hold of the rope, which he said he did to aid the horses in pulling; but this in itself is not sufficient to defeat the action. If defendant was at fault in operating such an appliance without any warning, barricade, or guard, because it was of such a nature as to attract young children which it knew were passing that particular point, and if in fact it knew, as the testimony tends to show, that young children, rightly upon the street, were in fact attracted by the appara-tus, and through curiosity or otherwise were led to take hold of the ropes, or to play with the pulley, the doctrine of there being no duty to trespassers does not apply in full force, if at all. The attractive character of the appliance, the fact that it did, just before the accident, attract other children, the fact that the defendant's employees did warn other children away, and then, although with knowledge that many other children were passing along the street on their way home from school, left the place unguarded, went half a block away, and gave the matter no further attention, creates

an exception to the rule that the children were trespassers to whom the defendant owed no duty.

The attractive character of the appliance was such, as some of the cases put it, as to create an implied invitation to the children to use or put their hands upon it. Or, as other cases put it, the negligence of the defendant was the primary and proximate cause of the injury, and the trespass the secondary or remote cause, and in either event, if defendant was negligent, the technical trespass of the child does not defeat recovery.

III. The whole case turns, as we view it, upon the one proposition, to wit: Was there testimony from which a jury might have found that defendant was negligent?

3. SAME: negligence: evidence.

While defendant had the right to use the street and the appliances that it did, it was bound in law to the exercise of ordinary and usual care in the handling thereof, and what amounts to such care is generally a jury question. What it might do in the country and along public highways does not necessarily give it license to do the same at or near a schoolhouse, where children are likely to be passing in numbers at certain hours of the day. It might, as we understand it, have attached the snatch block so high that children could not have reached it. It might, during the time children were due to pass, have stationed guards to keep them away from the dangerous pulley. It might also have erected a barricade around the pulley so as to have kept children away from it. It was a mere licensee upon the street, having no absolute right thereon, and was bound to so use its privilege as not to harm others who had the same rights there which it had; and it was also bound to take into account the known habits and customs of children and of their propensities to play with or put their hands upon the appliance. All these things, as a reasonable and prudent person, it was bound to take into account.

A very potent and significant fact in the case is that defendant's employees were actually warned, but a few minutes

before the accident, that the appliance with which they were working was attractive to children, and they had warned them away; but, having done this with one group, they went half a block away, without leaving any guard or giving any alarm, and allowed or permitted other children to get hold of the rope, and one of them was injured, as stated.

It seems to us, when it is once conceded that defendant was a mere licensee upon the street, that children had an equal right thereon, and that defendant knew of the attractiveness of the appliance, from actual experience, that the case is very much stronger than the so-called "turntable" cases, which we have followed and approved as a rule for this state. See *Edington v. Railroad*, 116 Iowa, 410; *Fishburn v. Railroad Co.*, 127 Iowa, 483. It is not like those cases relied upon by the appellant, where the defendant was in the use of its own appliances upon its own premises, to which it had an absolute right, and was not advised that children might be attracted by some piece of machinery or some appliance, as in *Hart v. Brick Co.*, 154 Iowa, 741; *Wood v. Ind. Dist.*, 44 Iowa, 27; *Brown v. Canning Co.*, 132 Iowa, 631; *Anderson v. Railroad*, 150 Iowa, 465; *Cavanaugh v. Coal Co.*, 131 Iowa, 700; and other like cases relied upon by appellant.

The Supreme Court of Wisconsin had this exact question before it in *Kelly v. Wisconsin R. R.*, 152 Wis. 328 (140 N. W. 60, 44 L. R. A. (N. S.) 487), and Justice Marshall, in writing the opinion, said:

The principle involved here, so far as the precise facts go, keeping prominent that the child was where it had a right to be, the principle recognized in most of the authorities cited to our attention and illustrated time and again in our decisions, is this: He who maintains an object or condition liable to attract children of tender years to interfere therewith, under such circumstances as to be chargeable with knowledge that they may probably so interfere, to their personal injury, breaches his duty as to ordinary care not to imperil their safety. Keeping the principle in mind, one can easily see that customary violations of duty is no defense in

any particular instance. Numerous authorities are to the effect that places do not necessarily fall outside the principle because of the children, in going there, becoming trespassers. By common knowledge, very young children are liable to trespass and be wholly ignorant of wrongdoing, or substantially so. Is there not a duty owing such children as to such situations, a duty even within the broad lines of the principle stated, though they be wrongdoers, which may be actionably breached, and especially so in case of their being where they have a right to be, as in this case? The common instincts of mankind suggest that. Sound policy would seem to demand it, and the courts in general, and this court in particular, as to situations analogous to the one in hand, uphold it. Conservation of child life and safety as to artificial perils is one of such importance that ordinary care may well hold every one responsible for creating or maintaining a condition involving any such, with reasonable ground for apprehending that children of tender years may probably be allured thereinto. . . . There are numerous instances where the principle under discussion was applied that one must, in the exercise of ordinary care, be sensible of common childish instincts and not create or maintain, even on his own premises, a condition which he knows, or has reasonable ground to apprehend, may probably allure innocents into danger, notwithstanding one would technically trespass in reaching the peril. As indicated, whether that should be applied generally, or only to premises where children may rightfully be, is where courts have divided. . . . We need not pursue the subject above discussed further. The main contentions that defendant was not negligent because it was lawfully in the street, using the ordinary appliances in doing its work, and that respondent trespassed upon its property in taking hold of the rope, are unsound. They do not recognize the principle regarding the duty to children of tender years, nor that of infantile transgressions under such circumstances as we have here, do not make a child an outlaw without the protection which the humanity of the law commonly throws around child life. The jury found all the facts in respondent's favor essential to liability under the principles of legal responsibility indicated. Looking at the circumstantial, as well as the direct, evidence, we are unable, under the rule as to the weight of a jury finding, confirmed by the trial judge, to say

that there was no legitimate basis for sending the questions respecting the facts to the jury. So there stand these verities: Appellant created a condition liable to cause personal injury to children of tender years, if they interfered with the rope, as plaintiff did. It knew children were liable, at any time, to be within reach of the danger. It had reasonable grounds to suppose that the moving rope would allure such children into playing with the rope and so enter the zone of danger. It gave no directions to its employees, and they did not exercise any oversight, in respect to the matter. As before suggested, if it be true that the safety of children is customarily unthought of, as in this case, in the same or similar circumstances, and it is considered the evidence hardly goes that far, especially, not conclusively, then such work, under such circumstances, is customarily done without proper regard for young children who are liable to be lawfully playing in the street. The way a thing is customarily done is evidence on the question of whether ordinary care was used in a particular instance, and may be conclusive, but when such manner is obviously dangerous, as by wholly neglecting to give thought for the safety of children, playing in the street·where they may be allured into danger created by an outside agency, as in this case, is not a proper one merely because it·is the customary method. *Douglas v. Chi., M. & St. P. Ry. Co.,* 100 Wis. 405 (76 N. W. 356, 69 Am. St. Rep. 930); *Innes v. City of Milwaukee,* 96 Wis. 170 (70 N. W. 1064); *Jensen v. Wis. Central Ry. Co.,* 145 Wis. 326 (128 N. W. 982).

See, also, to the same effect, *Ferrell v. Cotton Mills,* 157 N. C. 528 (73 S. E. 142, 37 L. R. A. (N. S.) 64); *Haynes v. Seattle,* 69 Wash. 419 (125 Pac. 147); *O'Leary v. Telephone Co.,* 146 Mich. 243 (109 N. W. 434).

From the latter case we quote the following:

The plaintiff was in the public highway, where he had as much right to be as defendant's employees, and, while his laying his hand upon the cable was technically a trespass, it was no more so than taking the explosive cap from the box, in the case of *Powers v. Harlow,* 53 Mich. 507 (19 N. W. 257, 51 Am. Rep. 154). Plaintiff's mere technical trespass did not set in motion, as in the cases cited, the agencies which

caused his injury; those agencies were brought into operation and controlled by defendant's employees. There is reasonable ground for distinction between a case where something is left in the highway which can only injure a child by his meddling with it, and putting it into operation in the absence of the owner or person having it in charge, and a case like the present, where the owner is present operating the apparatus and has actual notice that the children are attracted by the tackle and will play with it unless prevented. . . . The age of the plaintiff has an important bearing upon both questions. Defendant's employees knew that the children were attracted by, and disposed to play with, the apparatus, since they had been playing with the reel which McCarthy had taken away from them, and then chased them across the street. Notwithstanding this, the children came back again. . . . It was for the jury to say whether, under the circumstances, the defendant's employees were not negligent in leaving the block unguarded and in not giving the children a proper warning of the danger of playing with the rope and in taking no precautions to ascertain whether the children had returned. It was also for the jury to say whether the plaintiff had sufficient warning of or sufficient understanding of the danger to render him guilty of contributory negligence.

Whilst the case is close in its facts, and may be said to be on the border line, we think the weight of authority, especially of the recent cases, and the application of what are now regarded as well-settled principles, calls for an affirmance of the judgment.

It is therefore—*Affirmed.*

LADD, C. J., and GAYNOR and WITHROW, JJ., concur.