FRANCIS THERESA GATTA, widow, *vs.* PHILADELPHIA, BALTIMORE AND WASHINGTON RAILROAD COMPANY, a corporation existing under the laws of the State of Delaware.

1. NEGLIGENCE—PRESUMPTIONS—BURDEN OF PROOF.

Ordinarily, there is no presumption of negligence, either on the part of the party injured or on the part of the defendant, from the mere fact that the injury occurred, but it is essential, to create a liability, that the plaintiff prove that the injury resulted from defendant's negligence and that the negligence of the person injured did not enter into the accident and was not the proximate cause thereof.

2. NEGLIGENCE—WHAT CONSTITUTES.

"Negligence" is the failure to observe, for the protection of the interests of another, that degree of care, prudence, and vigilance which the circumstances justly demand, whereby such other person suffers injury. It is the want of such care as a reasonably prudent and careful person would exercise under similar circumstances.

3. NEGLIGENCE—MUTUAL NEGLIGENCE.

Where, in an action for injuries, it appears that there has been negligence on the part of both plaintiff and defendant, and that each was operative at the time of the injury complained of, no recovery can be had, as the law will not measure the proportion of blame or negligence to be attributed to either party.

4. RAILROADS—OPERATION—WARNING.

A railroad company, switching cars in a yard, is bound to give warning of the approach and movement of its engines and trains to all persons who may be put in danger thereby, and the sufficiency of such warning depends on the character of the place at the point of danger, the position of the persons endangered, and the right, lawfulness, and purpose of their presence.

5. RAILROADS—NEGLIGENCE—OPERATION OF TRAINS—WARNING.

Where a railroad company is charged with negligence in failing to give timely and suitable warning of danger to be avoided by the approach of engines or trains in the yard, the warning, in point of time and sufficiency, has relation to and is controlled by the peculiar conditions of the place, the established and recognized habits and customs of its occupants, and the peculiar dangers to be encountered.

6. RAILROADS—OPERATION OF CARS—INJURIES TO WORKMEN—WARNING.

Where decedent, a Pullman car employee, was crushed between two cars by the operation of a switch engine in a yard, and plaintiff claimed that defendant was negligent in failing to give timely and sufficient warning of the movement of the engine on that track, plaintiff was entitled to recover if defendant was negligent in failing to give such timely and sufficient warning, and by reason thereof deceased, without fault on his part, was killed as he attempted to pass between the cars; but if timely and sufficient warning was given, and deceased disregarded it, and was killed, or if, at the time deceased was about to pass between the cars, the bell of the engine was ringing, and he was expressly warned not to go between the cars, then plaintiff could not recover.

7. TRIAL—CONFLICTING EVIDENCE—CONSIDERATION.

Where evidence is conflicting, the jury should reconcile it, if possible; and, if they cannot, they should give credit to that which, under all the circumstances, appears most worthy of credit, and reject the balance, considering the opportunity and advantages of each witness for seeing, observing, and knowing the things of which they testified, as well as their apparent fairness and intelligence, and any other elements which might properly bear on the accuracy of their testimony.

8. DEATH—DAMAGES.

In an action for wrongful death of plaintiff's husband, plaintiff's damages were such a sum of money as would reasonably compensate her for any and all damages that she had sustained, or might thereafter sustain, by reason of decedent's death, based on the number of years he would probably have lived, had he not been killed, and governed by the proportion of his gross earnings or income plaintiff would probably have received from him.

9. NEW TRIAL—GROUNDS—DISCRETION.

The granting of a new trial is a matter addressed to the discretion of the court, and will be allowed only where injustice has been done by misdirection of the court to the jury, by a rendition of a verdict contrary to the law and the evidence, by a verdict for excessive damages, by mistake of the jury, by reason of newly discovered evidence, because of surprise, by misconduct of the jurors, parties, or counsel, etc.

10. NEW TRIAL—APPLICATION—FILING.

Under the court rule that reasons for a new trial must be filed with the prothonotary within four days next after the trial, an affidavit for a new trial, filed on the day of the hearing of the motion, several days after the expiration of the four-day period, was too late.

*(November 27, 1911.)*

Judges BOYCE and RICE sitting.

*Anthony Higgins* and *Horace G. Eastburn* for plaintiff.

*Andrew C. Gray* (of *Ward, Gray* and *Neary*) for defendant.

Superior Court, New Castle County, November Term, 1911.

ACTION for damages (No. 57, September Term, 1907) for death of plaintiff's husband, alleged to have been occasioned through the negligence of the defendant company.

(See also 1 *Boyce* 293, *ante* 356, 3 *Boyce*—; 76 *Atl.* 56, 80 *Atl.* 617, 83 *Atl.* 788.)

At the trial, after the jury had been sworn and before proceeding to hear any testimony in the case, counsel for the plaintiff stated to the court that they relied wholly upon the amended declaration heretofore filed. Whereupon counsel for the plaintiff called the court's attention to the fact that the amended declaration was filed on the twenty-first day of January, A. D. 1910, more than one year after the death of the plaintiff's husband, on the twenty-eighth day of June, A. D. 1907, also the fact that the defendant relied upon the pleas of not guilty and the act of limitation which latter provided "that from and after the passage of this act no action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of one year from the date upon which it is claimed that such alleged injuries were sustained." (*Chapter* 594, *Volume* 20, *Laws of Delaware* 712), and moved that the jury be instructed to return a verdict for the defendant for the reason that the amended declaration set forth a new and different cause of action from that set forth in the original declaration.

This action was brought on the ninth day of August, A. D. 1907, and the original declaration which is not now relied upon was filed on the eighth day of August, A. D. 1908.

The court denied the motion, adopting and incorporating in its opinion the decision of the court in this case upon a similar motion, as reported in 1 *Boyce*, beginning on *page* 296, and ending on *page* 306.

BOYCE, J., charging the jury:

Gentlemen of the jury:—The court decline to give you bind-

ing instructions to find for the defendant, and submit this case
to you for your determination under the evidence before you and
the law which we will announce to you.

This action was brought by Frances Theresa Gatta, the plain-
tiff, against the Philadelphia, Baltimore and Washington Rail-
road Company, the defendant, to recover damages for the death
of Charles Gatta, her husband, alleged to have been occasioned
by the negligence of the defendant company. The material alle-
gations in the plaintiff's amended declaration, containing five
counts, and relied upon in this case, are in substance (1) that
the deceased was an employee of the Pullman Company, in this
city; (2) that the defendant company was engaged in taking cars
to and from the property of the Pullman Company; (3) that
openings between the cars on the tracks had been made for the
convenience of the Pullman Company's employees and that the
deceased was injured while passing between two cars in the dis-
charge of his duty as an employee of the Pullman Company by
reason of the failure of the defendant company to sufficiently warn
him of the movement of the cars; and (4) that the defendant
company was guilty of negligence generally in the movement of
its shifting engine at the time of the accident.

The first count in the declaration will convey to you the gen-
eral scope of the averments therein. It reads, in part, as follows:

"For that whereas, the plaintiff is the widow of a certain
Charles Gatta, deceased, and that, heretofore, to wit, at the time
of the committing of the grievances hereinafter mentioned, the
said Philadelphia, Baltimore and Washington Railroad Company,
the defendant above named, was and still is a corporation existing
under the laws of the State of Delaware, operating a certain line
of railroad in the City of Wilmington, in the County of New Castle
and State of Delaware, and being such corporation so engaged as
aforesaid, before and at the time of the committing of the griev-
ances hereinafter mentioned, had and used a siding from its said
certain line of railroad to the property of the Pullman Company,
a corporation existing under the laws of the State of Illinois, doing
business in the said City of Wilmington, which said siding of the
defendant connected with a certain siding or sidings on the prop-

erty of the said the Pullman Company and was used with the sidings on the property of the Pullman Company for the purpose of drawing cars to and from the property of the said the Pullman Company to the said certain line of railroad of the defendant; that, heretofore, to wit, on the twenty-eighth day of June, A. D. 1907, at the said City of Wilmington, at New Castle County aforesaid, the said Charles Gatta, the plaintiff's husband, was in the service and employment of the said the Pullman Company as a mechanic at their car works located on their said property in the said City of Wilmington, and was at work on a car, which was located on what was known as 'B' track on the property of the Pullman Company, there being another track or siding known as 'A' track on the property of the said the Pullman Company, between the car shops or buildings of the said the Pullman Company and the said 'B' track, on which was then and there standing the said car that the said Charles Gatta was working upon; that then and there several cars, commonly known as Pullman cars or coaches, were standing on said 'A' track in the yard of the said car works of the said the Pullman Company; that two of said cars or coaches were not coupled together, but were several feet apart from each other, leaving an open space of that extent between said two cars, through which the employees of the said the Pullman Company could pass and repass while in and about their said employment; that the said defendant then and there operating and having control of a shifting engine or locomotive, negligently, carelessly and recklessly, without ringing the bell or blowing the whistle of the said shifter, engine or locomotive, and without giving any other warning to the said Charles Gatta, caused the said shifting engine or locomotive of the said defendant to push one of said two cars against the other of said two cars, suddenly and with such violence, that the said Charles Gatta, who, then and there in the exercise of due care and caution on his part, was in his employment as aforesaid passing between said two cars, was caught between said two cars, to wit, at New Castle County aforesaid, and thereby and by means of," etc.

This gives you the general scope of the plaintiff's complaint in this case. It is not controverted that Charles Gatta, the plain-

tiff's husband, was, on the twenty-eighth day of June, A. D. 1907, the day on which the accident, causing his death, occurred, and had been for a considerable time, employed by the Pullman Company; that the Pullman works and yards were then and now are on the east side of and adjoining the right of way and tracks of the defendant company, in this city, and were connected with the tracks of the defendant company by a siding; that the Pullman Company has within its yards its own private tracks on which its cars are placed from time to time for repairs and other purposes; that these private tracks are known as tracks "A", "B", and "C", respectively, and that track "A" is next to the buildings, and is paralleled by the other two in alphabetical order.

It is admitted that the defendant company owned the engine and was, at the time of the accident, lawfully engaged in shifting cars on track "A" for the Pullman Company, and that the deceased was caught between two cars on said track and killed.

The plaintiff claims that, on the morning of and before the accident, the servants of the defendant company had been engaged in shifting cars on track "C" in the yard of the Pullman Company; and while so engaged, the deceased left the car on track "B", in which he had been working and went into what is known as the trimming building of the Pullman Company to see his foreman with reference to his work; that in going to see his foreman, he crossed track "A" in some unknown manner; and that while the deceased was in said building, the shifting engine was moved from track "C" to the entrance of track "A".

It is not denied that the engine was moved from track "C" to track "A", and that before the shifting on track "A" was begun, the usual warning was given by shouting aloud along track "A", upon which there were several cars, "Look out for cars on track A," and that the warning was heard by all the men present and employed in and about the tracks and cars on tracks "A" and "B".

The plaintiff claims that this warning was given from two to four minutes before the accident and while the plaintiff's husband was with his foreman in the said building, and that after the said

25 Del.]       GATTA vs. P., B. & W. R. R. Co.         557

Charge.

warning had been given and had ceased from two to four minutes, the deceased came out of the said building some eight or ten feet in advance of his foreman, and that when the latter appeared at the door of said building and had taken a step or two, the deceased, in the exercise of due and reasonable caution and without any warning that the shifter was on track "A", and about to move, went between two cars standing apart two and a half or three feet on track "A", and was caught and received the injuries by the movement of the shifter, while between the cars, from which he died very soon thereafter. The defendant claims that the deceased knew that the shifter was in the yard, engaged in shifting on track "C" when he left the car in which he was working on track "B" to go to his foreman in the said trimming building, and that when the shifter was moved from track "C" out of the yard of the Pullman Company to track "A"—the engine and tender were stopped upon entering on track "A"—with the engine only inside of the yard, and that then the servants of the defendant company, as well as servants of the Pullman Company, gave the usual warning up and down track "A", by crying aloud along the track on both sides, "Look out for cars on track A," and that when the signal was given to the engineer to move forward with the engine on track "A", and before the engine had been started, the bell was rung and continued to be rung after the deceased came out of the building, and was ringing at the time the deceased went between the cars and until after the accident; that the deceased, on coming out of the building walked fast, with his head downward, between the building and track "A" some fifteen or twenty feet when he passed between the cars, and that immediately before, and at the time he was about to go between the cars, he was expressly warned not to do so.

And the defendant claims that the accident from which death resulted to the plaintiff's husband was not due to any negligence attributable to it or its servants, but was occasioned by the fault or negligence of the deceased to exercise due and reasonable care and caution after timely and sufficient warning. We have now stated to you substantially the contention of the parties. We have carefully considered the prayers of counsel. We cannot charge you

either in the language or to the extent we have been requested to by some of the prayers. Our charge to you upon the law which we are about to deliver, covers substantially, we think, the law applicable to the facts of this case.

[1] This action is based upon negligence. Ordinarily, there is no presumption of negligence, either on the part of the plaintiff, or on the part of the defendant, from the mere fact that a person is injured, that is, there is no presumption that the injury resulted from negligence, such as is necessary to create liability for the injury.

To recover for such injury, it is necessary for the plaintiff to satisfy the jury by a preponderance of the proof—that is, the greater weight of the evidence, that the negligence of the defendant caused the injury in the manner alleged.

[2] Negligence has been defined as the failure to observe for the protection of the interests of another, that degree of care, prudence, and vigilance which the circumstances justly demand, whereby such other person suffers injury. It has been termed the want of ordinary care; that is, the want of such care as a reasonably prudent and careful man would exercise under similar circumstances.

[3] In an action of this kind, if the jury should find from the evidence that there was mutual negligence, that is, negligence on the part both of the plaintiff and of the defendant, and the negligence of each was operative at the time of the injury complained of, a recovery cannot be had for such injury.

If the negligence of the deceased entered into the accident and was the proximate cause of the injuries which resulted in his death, even though the defendant was guilty of negligence, operating at that time, a recovery cannot be had; for where there is contributory negligence the law will not attempt to measure the proportion of blame or negligence to be attributed to either party. Like as the plaintiff must sustain his allegation of negligence by satisfactory proof before he can recover, so the defendant when he relies upon contributory negligence on the part of the plaintiff as a defense must satisfy the jury that the contributory negligence

of the plaintiff entered into and was the proximate cause of the injury complained of.

[4]   The law imposes upon a railroad company the duty to give warning of the approach and movement of its engines and trains to all persons who may be put in danger thereby, and, under the varied conditions of their operation, requires generally that such warning shall be timely and sufficient.   What constitutes a warning that in time and manner is sufficient to enable others to avoid danger, depends upon the character of the place at the point of danger, the position of the persons endangered and the right, lawfulness and purpose of their presence.

[5]   When the act of negligence charged against a defendant railroad company is its failure to give timely and suitable warning of the danger to be avoided, the warning in point of time and sufficiency, has relation to and is controlled by the peculiar conditions of the place, the established and recognized habits and customs of its occupants and the particular dangers to be encountered.   *Gatta v. P., B. & W. R. Co.*, 1 *Boyce*, 293, 76 *Atl.* 56.

You have before you in evidence photographs of notices posted upon the buildings in the yard of the Pullman Company. By these notices "employees must not work under cars or on scaffolds or ladders inside of cars or pass between cars while cars are being shifted in the yard."   In order for you to determine whether the warning given by the defendant company in this case was timely and sufficient, you should consider all the conditions surrounding the deceased at the time of the accident as they have been detailed to you by the witnesses.

We do not understand that it is claimed that there was any danger in crossing the tracks and passing between the cars on the tracks when shifting of cars was not going on in the yard.   And it is not denied that it was the custom of the employees of the Pullman Company to both cross the tracks and pass between cars without any warning when shifting was not being done.

The danger in crossing the tracks or passing between the cars arose from the presence of the engine about to be engaged in shifting the cars in the yard.   Immediately before and at the time shifting was to begin by the defendant company, on track "A", or

on any one of the tracks, for that matter, the particular track became a place of danger, and it became the duty of the defendant company to give timely and sufficient warning of the approach and movement of its engine to prevent injury to employees working in and about the cars or who might be dangerously near the track upon which shifting was to be done. With notice of the presence of the engine for the purpose of shifting and after timely and sufficient warning it became equally the duty of the servants of the Pullman Company, including the deceased, to exercise due and reasonable care to avoid being injured.

In cases of this character, the duties imposed upon the parties, defendant and plaintiff, are correlative and each is required to use such reasonable care as the circumstances require—the one being required to exercise such care in order to avoid inflicting injury, and the other to avoid being injured.

The important questions for your determination are: Did the defendant company give timely and sufficient warning to the deceased of the approach and movement of the shifting engine on track "A"? Was such warning given, and did the deceased, notwithstanding, disregard it?

You have heard the testimony of the witnesses. The court is not permitted to comment upon the testimony if inclined to. You are the exclusive judges of the credibility of the witnesses and of the weight and value of their testimony.

[6] If you are satisfied from a preponderance of the evidence that the defendant company was negligent in not giving timely and sufficient warning to the deceased of the approach and movement of its shifting engine to and on track "A", and that by reason of such negligence, he the deceased, without fault on his part, attempted to pass between the cars and was killed, your verdict should be for the plaintiff. If, however, you should be satisfied from a preponderance of the evidence that the defendant company gave timely and sufficient warning to the deceased of the approach and movement of its engine to and on track "A", and he, the deceased, disregarded such warning and attempted to pass between the cars and was caught and killed by the movement of the engine, your verdict should be for the defendant.

25 Del.] . GATTA vs. P., B. & W. R. R. Co. 561

Charge—Verdict—Reasons for New Trial.

If you should be satisfied from a preponderance of the evidence that at the time the deceased was about to pass between the cars the bell of the engine was ringing and that he was expressly warned not to go between the cars, your verdict should be for the defendant.

The jury in determining the value of testimony may and often should give greater weight to positive than to negative testimony. But all the testimony should be considered by the jury and given such weight as in their judgment it is entitled.

[7] When the testimony is conflicting, the jury should reconcile it, if they can; if they cannot, they should give credit to the testimony of those witnesses who, under all the circumstances appear to the jury to be most entitled to credit, and reject such testimony as they may deem unworthy of credit, taking into consideration the opportunity and advantages of each for seeing, observing and knowing the things of which they testified, as well as their apparent fairness, intelligence and any other element which may fairly test the truthfulness and accuracy of each.

[8] If you find for the plaintiff, it should be for such a sum of money as will reasonably compensate her for any and all damages that she has sustained, or may hereafter sustain by reason of the death of her said husband, basing your verdict upon the number of years the deceased would probably have lived had he not been killed, and governed by what portion of the gross earnings or income the plaintiff would probably have received from the deceased if he had lived. Your verdict should be for that party in whose favor you find the preponderance or great weight of the testimony.

Verdict for plaintiff.

Whereupon counsel for defendant moved for a new trial and in arrest of judgment, and filed the following reasons:

1. That the verdict is contrary to the law and the evidence.
2. That the verdict is contrary to the evidence.
3. That the verdict is contrary to the law.
4. That the damages of $9,000 awarded by the jury are grossly excessive.

5.   That injustice was done to the defendant in the statement of the contentions of the plaintiff and defendant to the jury by the court, in that while all the contentions of the plaintiff were fully and plainly stated to the jury, all the contentions of the defendant were not so stated:

(a)  While the court stated to the jury that the defendant contended that vocal warning had been given of the movement of the cars in question in the following or similar language: "Look out around the cars on track A"—yet the court did not state to the jury the contention of the defendant, that such vocal warning was continuous up to the very time of the accident.

(b)  In that the court did not state to the jury that the defendant contended that the plaintiff's intestate could or should have seen the engine attached to the cars on track A while going from the shop door diagonally across the platform to the opening between the two cars at the place of the accident, and that the defendant contended that the evidence showed that such locomotive was in plain sight.

6.   That injustice was done to the defendant by the failure of the court to charge as requested in the eighth prayer of the defendant, viz.:

"Where the physical facts make it certain that Gatta could have seen the danger in time to have averted the injury to him if he had looked, he will not be heard to say that he looked but did not see, but he will be held to have seen what was obvious, and if he did not heed it his conduct will present the case of a person thrusting himself rashly into danger, in which case he cannot make his own rashness and folly the ground of recovery of damages from another."

7.   Or in such modification of the language thereof as would embody the proposition of law therein contained without charging upon the facts in the case before them.

8.   That the court erred in not charging the jury in relation to the law bearing upon the testimony produced in the case by witnesses of both the plaintiff and the defendant, showing or tending to show that if the plaintiff had looked he could have seen the engine in time to have prevented the accident.

9.  That the verdict rendered by the jury is so grossly excessive as to shock the conscience of the court and to clearly demonstrate that it was the result of undue sympathy for the plaintiff, or compassion, prejudice, partiality or caprice on the part of the jury.

10.  That the verdict rendered for the plaintiff was so clearly against the preponderance of evidence as to shock the conscience of the court and to clearly demonstrate that it was the result of undue sympathy for the plaintiff, or compassion, prejudice, partiality or caprice on the part of the jury.

At the same time counsel for defendant filed his reason in support of the motion for arrest of judgment theretofore filed in said cause; said reason being as follows:

"Because that as appears on the record of this cause the plaintiff abandoned the original declaration filed in said cause, and relied entirely upon an amended declaration filed in said cause, and that said amended declaration was filed in said cause upwards of one year after the happening of the accident complained of in said cause, and upwards of one year after the filing of the original declaration in said cause."

The following opinion was delivered by the court in denying the motion for a new trial and for arrest of judgment:

BOYCE, J., delivering the opinion of the court:

We have very carefully considered the very able arguments of counsel both in support of and against the motions for a new trial and in arrest of judgment in this case. The principles of law which govern in motions of this character have been repeatedly announced by this court, and we do not think we should depart therefrom.

[9]  The granting of a new trial is a matter addressed to the discretion of the court, and is exercised only where injustice has been done by the misdirection of the court to the jury; by rendering of a verdict contrary to the law and the evidence; by a verdict for excessive damages; by mistake of the jury; by reason of after discovered evidence; because of surprise; or by the misconduct of jurors, parties or counsel, and the like, and except on some such

grounds tending manifestly to show that the discretion of the jury has not been legally or properly exercised, a new trial will not be granted; for it is a principle of law, long prevailing in this jurisdiction, that the verdict of a jury upon an issue of fact will not be disturbed except for some such reason as already stated, and especially is this so where the verdict is founded on conflicting evidence. Only in instances where injustice has been done and upon the policy that the verdict when wrong should not be conclusive will the court set the verdict aside and award a new trial. 1 *Woolley on Del. Prac.* § 733.

[10] Reasons for a new trial under rule of court must be filed with the prothonotary within four days next after the trial, and the affidavit filed in this case having been filed on the day of the hearing of the motion for a new trial,—several days after the expiration of the four days after the trial, we do not think it was filed in time.

Without further discussing the law applicable to new trials as administered in this state or the evidence adduced at the trial, we decline to grant a new trial.