Charlotte M. O'TOOLE, Robert J. Wilson; Charlotte M. O'Toole, Administratrix of the Estate of Thomas B. O'Toole; and St. Paul Fire and Marine Insurance Company, a Corporation of the State of Minnesota,

v.

The UNITED STATES of America,

and

The District of Columbia, a Corporation. of the United States.

Charlotte M. O'Toole, Appellant in No. 12013.

The United States of America, Appellant in No. 12014.

Nos. 12013, 12014.

United States Court of Appeals Third Circuit.

Argued Jan. 11, 1957.

Decided March 14, 1957.

As Amended April 1, 1957.

Januar D. Bove, Jr., Wilmington, Del. (Arthur G. Connolly, Connolly, Cooch & Bove, Wilmington, Del., on the brief), for Charlotte M. O'Toole in No. 12,013 and appellees in No. 12,014, except Robert J. Wilson.

H. Newton White, Asst. U. S. Atty., Wilmington, Del. (George Cochran Doub, Asst. Atty. Gen., Leonard G. Hagner, U. S. Atty., Wilmington, Del., on the brief), for U. S.

William H. Foulk, Herbert L. Cobin, Wilmington, Del., on the brief for Robert J. Wilson, appellee.

Before GOODRICH, KALODNER and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

The actions in this litigation were brought against the United States under the Tort Claims Act, 28 U.S.C. §§ 1346 (b) and 2674. The principal law question involved was the responsibility of the United States for injuries occasioned by the negligence of members of a District of Columbia National Guard unit while the guardsmen were engaged in military service. The injury took place in Delaware in July, 1950. This Court, reversing the trial court, held that the United States was responsible and sent the case back for trial. 3 Cir., 1953, 206 F.2d 912.

The case has now been tried and both parties have appealed. The trial judge made detailed findings of fact. His findings, so far as the negligence, contributory negligence and the extent of physical injuries are concerned, are not appealed from and indeed, hardly could be on this record. The United States de-

nies liability under the Tort Claims Act. Its counsel, however, recognizes that our former holding is the law of the case and does not seek to reargue the question here but reserves the right to raise it again if the case goes further. The appeal from each party comes on the question of damages occasioned to Mrs. O'Toole under the Death By Wrongful Act statute of Delaware. The United States says they were excessive. Mrs. O'Toole claims that an error was committed in leaving out one element of recovery to which she is entitled.

I. Government's Appeal.

The Government's claim will be considered first. The trial judge allowed $400,000. to the plaintiff as beneficiary under the Death By Wrongful Act statute. Del.Code Ann. tit. 10, § 3704(b) (1953). Obviously this is a large award. But it loses its breathtaking character when the factual background is understood. Thomas B. O'Toole in his lifetime was a phenomenally successful business man. He engaged in real estate and allied enterprises. There is adequate testimony from which the judge found he was making $250,000 a year at the time of his death. At the time of this fatal accident O'Toole was fifty-four years old and Mrs. O'Toole was fifty-seven. The trial judge had before him three life tables: the Commissioner's Standard Ordinary Mortality Table of 1941, United States Life Tables and Actuarial Table 1939–1941 which was a federal government table, and a table published by the Society of Actuaries called "Annuity Tables, Actuarial Functions." The tables give Mr. O'Toole an expectancy of 18.48, 20.2 and 22.99 years respectively. They indicate for Mrs. O'Toole an expectancy of 16.43, 18 and 24.59 years respectively.

█ It is recognized that life tables are a guide, not a formula which a judge or jury is compelled to apply. Holliday v. Pacific Atlantic S.S. Co., D.C.Del.1953, 117 F.Supp. 729, 734. The trial judge advertently refrained from making a prognosis of the expectancy of O'Toole's life. Dr. Aitken, the man who knew most about O'Toole's health, re-

fused to do so. One can hardly expect the trial judge to know more medicine than the physician.

There was evidence, too, showing the contributions which O'Toole had made to his wife in this lifetime. Of course they were not precise and one could not expect that they would be. But there was testimony that the contributions amounted to a sum between $35,000 and $40,000 yearly for the years preceding O'Toole's death.

O'Toole had an illness in March of 1950, a few months before his fatal accident. The nature of it is described in Judge Leahy's findings which are supported by the medical testimony. Here is what he said:

"O'Toole had a cerebral spasm caused by high blood pressure, essential hypertension. It was not a hemorrhage, occlusion, or stroke. O'Toole's illness was diagnosed and treated by Dr. Douglas Aitken, a defense witness, who specializes as a diagnostician and internist. Hospitalization was not required. The spasm and its symptoms cleared within several hours. Essential hypertension is classified from Grade 1 to 4 according to severity. O'Toole's condition after a searching and thorough medical examination was classified as Group 2, a moderate form, by Dr. Aitken.

"No other vascular disturbance or injury was found. The tests revealed O'Toole had *not* had high blood pressure 'for a very long time'. The doctor saw O'Toole at his home for five or six days, at his office on April 5, 1950, and periodically, about weekly, from April 5, until July 7, 1950. Blood pressure readings show that he had improved; his blood pressure on July 7, 1950 was 178 systolic over 86 diastolic, and the patient had lost thirty pounds. The doctor 'felt definitely that his blood pressure would come down further.' "

So far, so good. The government makes much of the trial judge's failure to make findings or comment upon testimony by a man named Thomas W. Reed, underwriting vice president and chairman of the risk committee of Continental American Life Insurance Company. Mr. Reed was not a medical man and did not pretend to be. He had a chart which purported to show the increase in risk for insured persons who have hypertension. This was not a medical chart; it was simply something to help an insurance company be on the conservative side and charge higher premiums in some cases. It did not take into account the actual cause of death of these persons who had hypertension and were covered by insurance and any conclusion drawn as to actual cause of death was necessarily a "post hoc ergo propter hoc" proposition. Mr. Reed's tables were not up to date on the basis of their statistics; he admitted that they had been criticized by other life insurance people and that he in no way professed to give medical but rather business advice. But even then, taking the government's argument, the reading of diastolic pressure showed that the most unfavorable showing indicated that Mr. O'Toole's life expectancy was only one-half that of other fifty-four year old men. That would give him at least ten years to live and ten years' earnings of $250,000 annually to show a fund from which a conclusion of $400,000 expectable support for his wife is not at all startling.

In other words, while the award is high there is ample evidence to justify it. It is not our function to substitute our judgment for that of the trial judge. Trowbridge v. Abrasive Co. of Philadelphia, 3 Cir., 1951, 190 F.2d 825; Dubrock v. Interstate Motor Freight System, 3 Cir., 1944, 143 F.2d 304.

The government complains that the trial judge did not make specific and detailed factual findings as he should have under the teaching of Hatahley v. United States, 1956, 351 U.S. 173, 76 S.Ct. 745, 100 L.Ed. 1065. There is not much to say about this point except that it is not well taken. The judge made,

as already said, detailed findings on all the points of evidence. He is not compelled to disclose the mental process of comparing the various life tables estimating probable expectancy more definitely than the medical witness could do and finally setting out an equation with paper and pencil. He gave us plenty of evidentiary findings to show the background of his conclusion. That, we think, is enough.

## II.  Plaintiff's Appeal.

■ This question is purely one of law. The trial judge in making his award stated specifically that it "does not include reasonably expected accumulations to the estate of the deceased husband, accruing thereto had he lived out his normal life span." [140 F.Supp. 682] The judge relied upon the last Delaware case, Turcol v. Jenkins, Del.Super.1956, 10 Terry, 596, 122 A.2d 224.

Interestingly enough this specific point seems not to have been discussed and adjudicated in Delaware. The statute reads as follows:

"(b) Whenever death is occasioned by unlawful violence or negligence, and no suit is brought by the party injured to recover damages during his or her life, the widow or widower of any such deceased person, or, if there is no widow or widower, the personal representatives, may maintain an action for and recover damages for the death and loss thus occasioned." Del. Code Ann. tit. 10, § 3704(b) (1953).

In this case we must, as in other situations where we deal with state law, fashion our conclusion as best we can from materials at hand. If one takes the words of the statute literally it seems clear that "damages for the death and loss thus occasioned" should include a widow's share of what her husband in the remainder of his expected lifetime could reasonably be expected to accumulate as well as what a wife might get as support during that remainder. The first statement of the rule in Delaware is found in Parvis v. Philadelphia, W. &

B. R. Co., Del.Super.1889, 8 Houst. 436, 17 A. 702, 706, where the jury was instructed to:

"'* * * estimate the reasonable probabilities of the life of the deceased, Dr. Parvis, and give the plaintiff such pecuniary damages, not only for past losses, but for such prospective damages, as the jury can find she has suffered, or will suffer, as the direct consequence of death to the said Dr. Parvis.'"

Typical of the more recent statements of the Delaware rule is the jury charge in Lynch v. Lynch, Del.Super.1937, 9 W.W.Harr. 1, 195 A. 799, 804:

"If you find for the plaintiff, your verdict should be for such sum of money as will reasonably compensate her for any and all damages which she has sustained or may hereafter sustain by reason of the death of her husband basing your verdict upon the number of years the deceased would probably have lived had he not been killed. In estimating and measuring the damages you should not be governed by what would probably have been the gross earnings or income of the deceased, but what portion of the gross earnings or income the plaintiff would probably have received from the deceased, as his wife, if he had lived * * *."

Charges the same or similar to the above formulations were given in Lockerman v. Hurlock, Del.Super.1924, 2 W.W.Harr. 479, 125 A. 482, 483; Lemmon v. Broadwater, Del.Super.1919, 7 Boyce 472, 108 A. 273, 275; Fulmele v. Forrest, Del. Super.1913, 4 Boyce 155, 86 A. 733, 735; Gatta v. Philadelphia, B. & W. R. Co., Del.Super.1911, 2 Boyce 551, 83 A. 788, 792; Reed v. Queen Anne's R. Co., Del. Super.1903, 4 Pennewill 413, 57 A. 529, 532; Cox v. Wilmington City Ry. Co., Del.Super.1903, 4 Pennewill 162, 53 A. 569, 570; affirmed per curiam, Del.1905, 7 Pennewill 1, 76 A. 1117; and Williams v. Walton & Whann Co., Del.Super.1892, 9 Houst. 322, 32 A. 726, 730. Cf. Wood v. Philadelphia, B. & W. R. Co., Del.

Super.1910, 1 Boyce 336, 76 A. 613 (widow specifically limited her claim to lost support).

In a dictum in the recent decision of Coulson v. Shirks Motor Express Corp., Del.Super.1954, 9 Terry 561, 107 A.2d 922, 924, Judge Terry said, obiter, that under the death act the measure of damages is "the pecuniary loss occasioned to the named beneficiaries." In the most recent case, Turcol v. Jenkins, Del.Super.1956, 10 Terry 596, 122 A.2d 224, which was cited by Judge Leahy, the court said:

> "The language of the charges contained in these decisions is quite general in character, and as may be expected, differs somewhat. It may be summarized as follows. The widow is presently entitled to receive a sum which (invested) would equal the amount she would have received from her husband had he lived his full expectancy. Or, stated otherwise, she should receive an award which would permit her to enjoy the same economic position she would have been in had her husband not been killed." 122 A.2d at page 225.

Our conclusion is that the Delaware decisions do not speak precisely to this point. The general language of the statute and reiteration in charges to juries that the plaintiff is entitled to recover such damages as will be suffered are consistent with allowing this item of recovery. But it cannot be said that the local law is crystal clear.

From the standpoint of principle it seems to us that the item in question should be taken into consideration in fixing damages. A widow is entitled to a share of her deceased husband's estate if she outlives him. If he is a man who is accumulating an estate as the years of his life go by the widow suffers loss from his untimely death with regard to what she might inherit as well as what she might have from the husband for support. The only argument against allowing such recovery that we can see is that whether there will be growth of the husband's estate is a matter of speculation. But in this area exact calculations are impossible to make at best. There is the additional question whether the wife could have been expected to survive the husband had it not been for his death by accident. But that is no harder to figure than the expectation of life for the decedent himself had he been permitted to live out his time.

The authorities do not give us the discussion of this matter that one would expect to find as he dips into the books. McCormick, Damages 350 (1935) has a short statement which, while not detailed, is perfectly clear. He says:

> "An element of damage which is infrequently asserted in these cases, but which seems properly allowable, is the present value of any additional accumulations which the deceased would have made during the remainder of his life if he had not been killed and which he could reasonably be expected to leave to his wife and children eventually at his death. * * *"

Other writers are in accord. 5 Sutherland, Damages § 1265 (4th ed. 1916); Sedgwick, Measure of Damages § 574a (9th ed. 1920). Numerous decisions recognize that the item is a proper one for consideration in fixing damages although it must be admitted that there is seldom any discussion of principle.[1]

1. E. g., Colorado, Denver & R. G. R. Co. v. Spencer, 1900, 27 Colo. 313, 61 P. 603, 51 L.R.A. 121 (children recovered lost inheritance); Florida, United States v. Compania Cubana De Aviacion, S. A., 5 Cir., 1955, 224 F.2d 811; Dina v. Seaboard Air Line R. Co., 1925, 90 Fla. 558, 106 So. 416; Illinois, Denton v. Midwest Dairy Products Corp., 1936, 284 Ill.App. 279, 1 N.E.2d 807; Missouri, Bagley v. St. Louis, 1916, 268 Mo. 259, 186 S.W. 966 (brothers and sisters of deceased may recover their probable shares of accumulations); New Hampshire, cf. Adams v. Severance, 1945, 93 N.H. 289, 41 A.2d 233; Oregon, Nordlund v. Lewis & Clark R. Co., 1932, 141 Or. 83, 15 P. 2d 980 (widow's suit under the Employers' Liability Act which, for present purposes, resembles the Delaware Death By

We are going to send this case back for further consideration by the district judge of this item. Further recovery which Mrs. O'Toole gets, if any, must take into account what she has already inherited as surviving spouse. We do not pass on the question whether on this record anything further shall be added to her already generous recovery. We do say that the item expressly excluded in ascertaining damages is one which in our judgment should have been included.

The judgment of the district court will be reversed in the appeal by Mrs. O'Toole in No. 12,013 and the cause remanded for further proceedings not inconsistent with this opinion. The Government's appeal in No. 12,014 being without merit will not be sustained.

Wrongful Act statute); *Texas*, International-Great Northern R. Co. v. Acker, Tex.Civ.App.1939, 128 S.W.2d 506, 525 (children may recover for loss of prospective accumulations); *Utah*, Parmley v. Pleasant Valley Coal Co., 1924, 64 Utah 125, 228 P. 557 (child recovered lost inheritance); Spiking v. Consolidated Ry. & Power Co., 1908, 33 Utah 313, 339, 93 P. 838, 847; and *Wisconsin*, Tidmarsh v. Chicago, M. & St. P. Ry. Co., 1912, 149 Wis. 590, 136 N.W. 337.