832 F.2d 136
 Danford Evan BODRUG and National Trust Company, Limited,
executors of the estate of Evan Wesley George
Bodrug, Plaintiffs-Appellants, Cross-Appellees,
v.
UNITED STATES of America and Federal Aviation
Administration, Defendants-Appellees, Cross-Appellants.
 Nos. 85-2163, 85-2210.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 29, 1987.
 
 A. Alan Berger of Berger & Miranda, San Jose, Cal., for plaintiffs-appellants, cross-appellees.
 John F. Cordes, Atty., Dept. of Justice, Washington, D.C. (Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Brent D. Ward, U.S. Atty., Salt Lake City, Utah, and Marc Richman, Atty., Dept. of Justice, Washington, D.C., with him, on brief), for defendants-appellees, cross-appellants.
 Before SEYMOUR, McWILLIAMS, and BALDOCK, Circuit Judges.
 SEYMOUR, Circuit Judge.
 
 
 1
 The testate heirs of Evan Wesley George Bodrug brought this action for wrongful death against the United States under the Federal Tort Claims Act, 28 U.S.C. Secs. 1346(b), 2671 et seq. (1982). Plaintiffs appeal from a bench trial judgment in their favor, claiming that the amount of damages awarded by the court is insufficient in light of the evidence they presented. The Government cross-appeals from the district court's ruling on a choice-of-law question, asserting that the court improperly applied Utah law, which permits recovery of damages for the loss of prospective inheritance. The Government contends that Montana law applies, and that such damages are not recognized by that state. We hold that these damages are available under the law of either state. We therefore need not determine whether the trial court correctly decided the choice-of-law question. We also hold that the amount of damages was appropriate in light of all the evidence. The judgment is therefore affirmed in all respects.
 
 I.
 
 2
 Evan Bodrug died instantly in a plane crash near Kalispell, Montana, on January 10, 1980. Plaintiffs claimed that the accident was caused by the negligent acts of personnel of the Federal Aviation Administration who were operating the air traffic control tower in Salt Lake City, Utah. The Government did not contest liability, and the suit proceeded to trial on the issue of damages only.
 
 
 3
 In suits brought under the Federal Tort Claims Act, federal courts are required to apply "the whole law of the State where the act or omission occurred." Richards v. United States, 369 U.S. 1, 11, 82 S.Ct. 585, 592, 7 L.Ed.2d 492 (1962). The "whole law" of the state includes that state's rules regarding choice of law. See id. at 11, 82 S.Ct. at 592. The district court in the present case accordingly looked to Utah's conflicts rules to determine which state's law should govern the damages issue. After briefing and arguments by the parties, the district court determined that the substantive law of Utah would control.
 
 
 4
 Utah law specifically recognizes that an element of damages in a wrongful death suit is the loss of prospective inheritance--the value of money or property that the decedent would have accumulated during his natural life and that the plaintiff would probably have received by will or intestacy at the end of the decedent's natural life. See Allen v. United States, 588 F.Supp. 247, 445 (D.Utah 1984), rev'd on other grounds, 816 F.2d 1417 (1987); Burbidge v. Utah Light & Traction Co., 57 Utah 566, 196 P. 556, 558 (1921). In this case, two of the plaintiffs who inherited through Bodrug's will were awarded the loss of their prospective inheritance as a portion of their damages at trial.
 
 II.
 
 5
 The Government contends that the district court improperly interpreted Utah's conflicts rules in determining that Utah substantive law, rather than the law of Montana, governs the damages issue. Utah has traditionally adhered to the rule of lex loci delicti in deciding choice-of-law questions. See Madison v. Deseret Livestock Co., 574 F.2d 1027, 1032 (10th Cir.1978); Jackson v. Continental Bank & Trust Co., 443 F.2d 1344, 1349 & n. 6 (10th Cir.1971); Velasquez v. Greyhound Lines, Inc., 12 Utah 2d 379, 366 P.2d 989, 991 (1961), overruled on other grounds, Harris v. Utah Transit Authority, 671 P.2d 217 (Utah 1983); Hudson v. Decker, 7 Utah 2d 24, 317 P.2d 594, 595 (1957). The general rule under lex loci is that when the defendant's act or omission occurs in one state and the harm to the plaintiff occurs in another, the substantive law of the latter applies. See Bowen v. United States, 570 F.2d 1311, 1315 n. 4 (7th Cir.1978) (citing R. Weintraub, Commentary on the Conflict of Laws 200 (1971)); E. Scoles & P. Hay, Conflict of Laws Sec. 17.2, at 552 (1982); Restatement of Conflict of Laws Secs. 377, 412, 417 (1934). Thus, the Government contends that under lex loci Montana law should govern the question of damages in this case. Plaintiffs argue, however, that if presented with the question Utah would abandon the lex loci rule in favor of the more modern significant contacts rule. The Government counters that even under such a test, Montana had more contacts with the plane crash than Utah because decedent, a Canadian citizen, was on business in Montana, the airplane was based in Montana, the pilot obtained his weather briefing in Montana, and the plane took off and crashed in Montana. We need not decide this issue, however, because we conclude that Montana would also allow damages for loss of prospective inheritance.
 
 
 6
 Montana's wrongful death statute, Mont.Code Ann. Sec. 27-1-513 (1985), typical of the wrongful death statutes in the vast majority of American jurisdictions,[1] creates a cause of action in favor of the decedent's heirs or personal representatives. The damages recoverable in a wrongful death suit are also governed by statute. Section 27-1-323 of the Montana Code provides that "[i]n every [wrongful death] action ..., such damages may be given as under all the circumstances of the case may be just." Mont.Code Ann. Sec. 27-1-323 (1985). The statute in no way elaborates on the type of wrongful death damages available. There are no reported Montana cases either allowing or disallowing damages for the loss of a prospective inheritance. Thus, in order to determine whether a Montana court would allow such damages, we look for guidance to Montana cases on wrongful death damages in general and to cases from other jurisdictions regarding loss-of-inheritance damages.
 
 
 7
 Montana follows the majority "pecuniary loss" rule for determining wrongful death damages. See Dawson v. Hill & Hill Truck Lines, 671 P.2d 589, 590 (Mont.1983). In general terms, this rule provides that the survivors are entitled to recover the pecuniary loss they suffer because of the decedent's death. See 4 F. Harper, F. James, Jr. & O. Gray, The Law of Torts Sec. 25.14 (2d ed. 1986). Montana is typical of other pecuniary loss states in its allowance of damages for loss of support, maintenance, or other monetary contributions and for the loss of services. See Strong & Jacobsen, Such Damages as Are Just: A Proposal for More Realistic Compensation in Wrongful Death Cases, 43 Mont.L.Rev. 55, 66-67 (1982). Montana also allows recovery for the loss of care, comfort, society, and companionship, see Dawson, 671 P.2d at 591, even though such damages cannot be considered strictly pecuniary, see Strong & Jacobsen, supra, at 68.
 
 
 8
 Our research indicates that the majority of cases that have addressed this question in jurisdictions with wrongful death statutes similar to Montana's have allowed recovery of damages for loss of prospective inheritance. See generally S. Speiser, Recovery for Wrongful Death Sec. 3:39 (2d ed. 1975 & Supp.1986); Annotation, Wrongful Death Damages for Loss of Expectancy of Inheritance from Decedent, 91 A.L.R.2d 477 (1963 & Supps.1979 & 1987). Significantly, the modern trend is to allow such damages. See S. Speiser, supra Sec. 3:39, at 279. Awarding loss-of-inheritance damages is entirely consistent with the general pecuniary loss rule that plaintiffs should be compensated for monetary losses directly attributable to the decedent's death.
 
 
 9
 The principal reason cited by cases denying recovery for loss of inheritance is that such damages are too speculative. See, e.g., Baker v. Slack, 319 Mich. 703, 30 N.W.2d 403, 407 (1948); Annot., supra, at 485 n. 10. According to these courts, the likelihood that decedent would have accumulated an estate and would have left a portion of the estate to the plaintiff is too uncertain to form a basis for a damage award. See, e.g., Baltimore & P.R. Co. v. Golway, 6 App.D.C. 143 (1895) (quoted in Annotation, supra, at 485). The Montana Supreme Court recognizes, however, that many damage awards arising from wrongful death suits are, "of necessity, ... based upon conjecture and surmise." Burns v. Eminger, 84 Mont. 397, 276 P. 437, 443 (1929) (discussing damages for loss of pecuniary support). For example, Montana specifically allows damages for loss of care, comfort, society, and companionship, despite "the speculative nature of such awards." Dawson, 671 P.2d at 591. In addition, the Montana Supreme Court has held that the parents of a deceased child may recover for the contributions that they might have received from their child after she reached majority, even though the jury would have to speculate to estimate those contributions. See Gilman v. C.W. Dart Hardware Co., 42 Mont. 96, 111 P. 550, 551 (1910) (quoting Birkett v. Knickerbocker Ice Co., 110 N.Y. 504, 18 N.E. 108 (1888)). Accordingly, we do not believe that the speculative nature of loss-of-inheritance damages would prevent them from being awarded by a Montana court.
 
 
 10
 Other federal courts construing uncertain state law have found loss-of-inheritance damages to be available, despite the absence of an express state court ruling on the subject and despite the fact that such damages are speculative. In O'Toole v. United States, 242 F.2d 308 (3d Cir.1957), for example, the court first determined that the case law of Delaware did not specifically allow or disallow such damages. The court nevertheless held that such damages were available under Delaware law. Id. at 312-13. In the court's view, the only argument against awarding such damages along with other pecuniary losses is that the growth of the decedent's estate and whether the plaintiff would naturally have survived the decedent[2] are "matter[s] of speculation." Id. at 312. The court discounted this argument by noting that, in general, damages in the wrongful death area are impossible to calculate exactly and that whether the plaintiff would naturally have survived the decedent may be answered by referring to longevity tables. See id. The court also found that legal commentators supported awarding such damages. See id; see also Esquilin v. Waterman Steamship Corp., 196 F.Supp. 600, 600-01 (D.P.R.1961) (holding such damages available where local law silent on issue; speculative nature of damages does not preclude recovery); cf. Moss v. Executive Beechcraft, Inc., 562 F.Supp. 873, 874 (W.D.Mo.1983) (holding that "better view" is to allow such damages although state law unclear).
 
 
 11
 The Government argues that Swanson v. Champion Int'l Corp., 197 Mont. 509, 646 P.2d 1166 (1982), precludes recovery of loss-of-inheritance damages under Montana law. We disagree. In Swanson, the Supreme Court of Montana was faced with deciding the extent to which an employer or its insurer is entitled under workers' compensation law to subrogation rights in wrongful death damages procured by a dead employee's surviving spouse. In the course of its opinion, the court outlined the differences in damages available in a wrongful death suit and those available in a "survival" action, i.e., an action based on claims existing during the lifetime of the decedent that survive his death and that may be pursued by his personal representative. See id. at 1169. Among other things, the court noted that an element of the damages available in a survival action is "the present value of [the decedent's] reasonable earnings during his life expectancy." Id.
 
 
 12
 The Swanson court also noted that "no survival action exists if the decedent's death is instantaneous." Id. Later, in comparing wrongful death damages, the court stated as follows:
 
 
 13
 "The obvious intent of the wrongful death statute is to provide a recovery for losses not covered by the survival action, for heirs who might otherwise have no recovery for their personal loss, especially if the death of the decedent were instantaneous."
 
 
 14
 Id. at 1171. The Government argues that damages for loss of prospective inheritance are essentially equivalent to damages for loss of future lifetime earnings, which are available under a Montana survival action. Because of Swanson 's statement that the wrongful death statute is intended to compensate heirs for damages not available in a survival action, the Government argues that loss-of-inheritance damages should not be recoverable in a Montana wrongful death suit.
 
 
 15
 We find this argument unpersuasive for the following reasons. First, in describing the damages available in a wrongful death action, Swanson nowhere expressly states that damages for loss of inheritance are either recoverable or not recoverable. This issue had not previously been addressed by a Montana court, and Swanson does not purport to decide it. Second, although Swanson states that the wrongful death statute is intended to compensate heirs for damages not available in a survival action, Swanson does not state that survival-type damages are never available in a wrongful death suit. In fact, in asserting that a wrongful death action permits heirs to recover those losses that are not compensable in a survival action, "especially if the death of the decedent were instantaneous," id. (emphasis added), the Swanson court implies that survival-type damages should be recoverable in a wrongful death suit if a survival action is impossible. Plaintiffs in the present case had no survival action under Montana law, because Bodrug's death was instantaneous.[3] Accordingly, Swanson arguably supports plaintiffs' recovery of Bodrug's prospective lifetime earnings in the form of prospective inheritance.
 
 
 16
 In summary, given the trend of the law and Montana's approach to wrongful death damages, we believe that a Montana court would award plaintiffs damages for their loss of inheritance. Because Montana law would produce the same result as Utah law, we need not otherwise address the trial court's choice-of-law decision.
 
 III.
 
 17
 Next, we consider plaintiffs' argument that the amount of damages awarded was insufficient in light of the evidence they presented. In particular, plaintiffs claim that the $600,000 awarded for their loss of prospective inheritance should have been substantially higher. Plaintiffs cite evidence presented by their expert witness indicating losses ranging from $5.8 million to $19.2 million. Plaintiffs acknowledge, however, that the findings of the district court may be reversed on appeal only if it is obvious from the record that they are clearly erroneous. See Fed.R.Civ.P. 52(a).
 
 
 18
 The trial judge expressed considerable doubt about the validity of numerous aspects of the testimony of plaintiffs' expert. For example, the judge questioned the accuracy of the expert's assumptions regarding Bodrug's salary at the end of his life and the value of his estate, both of which formed a crucial basis for the expert's projections about what Bodrug's estate would have been worth at the end of his life expectancy. Because the trial judge's weighing of this testimony stems largely from his impressions of the expert's credibility, deference to the judge's findings is particularly appropriate. Our independent review of the record indicates that the court's findings are not clearly erroneous. Accordingly, we affirm the damage award based upon the opinion of the trial court.
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 These statutes are commonly known as "Lord Campbell's Acts" because they are modeled after the English statute bearing that name. See Prosser and Keeton on the Law of Torts Sec. 127, at 945-46 (W. Keeton 5th ed. 1984)
 
 
 [2]
 In O'Toole, the plaintiff was the decedent's wife and was therefore entitled by law to a portion of the estate, notwithstanding any testimentary provisions to the contrary. See O'Toole, 242 F.2d at 312. In the present case, the heirs who sought loss-of-inheritance damages are the decedent's adult son and daughter, who would not be entitled by law to take a portion of the estate against the will. Cf. Mont.Code Ann. Sec. 72-2-702(1) (1985) (surviving spouse has right to elective share of estate). Here, although the plaintiffs were beneficiaries under decedant's will, whether they would have remained beneficiaries at the end of Bodrug's natural life is an additional matter of speculation. This distinction, however, does not render the general reasoning of O'Toole inapposite. The trial court appropriately considered this factor in determining the amount of the loss-of-inheritance award
 
 
 [3]
 If a survival action as well as a wrongful death suit were possible, allowing damages for both loss of lifetime earnings and loss of expected inheritance could, in many cases, lead to a double recovery. Our conclusion that Montana law allows loss-of-inheritance damages should not be construed to permit this result